**Bruce C. SCOTT, Appellant,**

v.

**John W. MACY, Jr., Chairman, United States Civil Service Commission, et al., Appellees.**

**No. 18483.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 17, 1964.

Decided June 16, 1965.

Mr. David Carliner, Washington, D. C., with whom Mr. David Isbell, Washington, D. C., was on the brief, for appellant.

Mr. Martin R. Hoffmann, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Gil Zimmerman, Asst. U. S. Attys., were on the brief, for appellees.

Before BAZELON, Chief Judge, and BURGER and McGOWAN, Circuit Judges.

BAZELON, Chief Judge.

Following competitive examinations for Federal civil service employment, appellant was notified in February 1962 that he had qualified for "personnel posi-

---

tions" at grade levels GS–9, 11 and 12, subject to further investigation. In April 1962, he appeared before a Civil Service investigator, who requested explanation regarding a 1947 arrest for "loitering," a 1951 arrest "for investigation," and "information [in the Civil Service Commission's possession] indicating that you are a homosexual." Appellant explained the circumstances of the 1947 arrest,[1] stated that he was "not specifically charged with a law violation" in 1951, and refused to comment on the alleged homosexuality because he did "not believe the Question is pertinent in so far as job performance is concerned."

On May 16, 1962, the Commission "disqualified [appellant] for employment in the competitive service because of immoral conduct."[2] He then requested a "specification of how, when and where [he had allegedly] conducted [himself] immorally so that [he] may adequately answer the broad, indefinite allegation of 'immoral conduct' * * *."[3] The Commission's Board of Appeals and Review responded only that "the record disclosed convincing evidence that you have engaged in homosexual conduct, which is considered contrary to generally-recognized and accepted standards of morality.

* * * *" After exhausting his administrative remedies, appellant unsuccessfully attacked the Commission's action in the District Court. This appeal followed.

Appellant has standing to challenge his exclusion from public employment. The Government's contrary argument is that "there is no basic right to public employment; stated another way, the power of appointment—absent statute or regulation—is exclusively within the prerogative of the Executive."[4] The argument is too broad. "[I]t does not at all follow that because the Constitution does not guarantee a right to public employment, [the Government] may resort to any scheme for keeping people out of such employment. Law cannot reach every discrimination in practice. But doubtless unreasonable discrimination * * * would not survive constitutional challenge."[5] As this court has said, "One may not have a constitutional right to go to Baghdad, but the Government may not prohibit one from going there unless by means consonant with due process of law."[6]

Appellant is an applicant for public employment, and thus may have less statutory protection against exclusion than an employee.[7] But he is not without con-

1. Appellant's explanation was as follows: "At Lafayette Square Men's Room, I was picked up by a police officer. After asking questions I would not answer, he had me charged with lortering [sic.] There was a man in the Men's Room who was behaving in an odd manner. I found I was unable to urinate and stepped outside to wait for him to come out. I went back in about ten minutes later and this fellow was still in the Men's Room in the same odd position (leaning over the urinal with his hand propped against the wall). The Police officer followed me in and when I was leaving he said he wanted to talk with me."

2. The Commission relied on Civil Service Regulations, 5 C.F.R. § 2.106 (1961 ed.): "*Disqualifications of applicants.*
  "(a) *Grounds for disqualification.* An applicant may be denied examination and an eligible may be denied appointment for any of the following reasons:
    * * * * *

  "(3) Criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct;"

3. Judge McGowan's opinion clearly shows that appellant did not abandon this request either before the Commission or this court.

4. Brief for appellee, p. 6.

5. Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 725, 71 S.Ct. 909, 915, 95 L.Ed. 1317 (1951) (concurring opinion). See Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 894, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

6. Homer v. Richmond, 110 U.S.App.D.C. 226, 229, 292 F.2d 719, 722 (1961).

7. See, *e.g.*, 5 U.S.C. § 652 (1958), regarding procedural requirements for removal or suspension from classified civil service; 5 C.F.R. § 731.302(a), that after one

stitutional protection.[8] The Constitution does not distinguish between applicants and employees; both are entitled, like other people, to equal protection against arbitrary or discriminatory treatment by the Government. The Executive may have discretion in hiring or firing, but "[d]iscretionary power does not carry with it the right to its arbitrary exercise." Shachtman v. Dulles, 96 U.S.App. D.C. 287, 290, 225 F.2d 938, 941 (1955).

The Commission excluded appellant from public employment because it con-

cluded that he had engaged in "immoral conduct."[9] With this stigma, the Commission not only disqualified him from the vast field of all employment dominated by the Government[10] but also jeopardized his ability to find employment elsewhere. The stigmatizing conclusion was supported only by statements that appellant was a "homosexual" and had engaged in "homosexual conduct."[11] These terms have different meanings for different people.[12] They therefore require some specification.[13] The Com-

year, an appointee may be removed for reasons which would originally have disqualified him from appointment "only on the basis of intentional false statement or deception or fraud in examination or appointment."

8. See Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); In re Summers, 325 U.S. 561, 571, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945); United Public Workers of America v. Mitchell, 330 U.S. 75, 100, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Hunter v. McLaughlin, 102 U.S.App.D.C. 293, 252 F.2d 857 (1958); Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964). In Joint Anti-Fascist Refugee Committee v. McGrath, Mr. Justice Jackson, concurring, stated: "The fact that one may not have a legal right to get or keep a government post does not mean that he can be adjudged ineligible illegally. Perkins v. Elg [307 U.S. 325, 349, 59 S.Ct. 884, 83 L.Ed. 1320]." 341 U.S. 123, 185, 71 S.Ct. 624, 655, 95 L.Ed. 817 (1951).

9. It is not necessary to decide whether the Commission may exclude an applicant for public employment without giving reasons since a reason was given; thus we must face the issue of the sufficiency of that reason. Compare, e.g., Perkins v. Elg, supra, note 8; Shachtman v. Dulles, 96 U.S.App.D.C. 287, 225 F.2d 938 (1955).

10. Compare, e.g., Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

11. Appellant's 1947 and 1951 arrests for "loitering" and "investigation" in no way establish "immoral conduct" Even assuming that conduct considered immoral by the police was involved in the arrests, it does not appear that convictions, or even forfeiture of collateral, followed. Compare Pelicone v. Hodges, 116 U.S. App.D.C. 32, 320 F.2d 754 (1963).

12. The Senate Subcommittee which investigated "Employment of Homosexuals and Other Sex Perverts in Government," stated:

"It was determined that even among the experts there existed considerable difference of opinion concerning the many facets of homosexuality and other forms of sex perversion. Even the terms 'sex pervert' and 'homosexual' are given different connotations by the medical and psychiatric experts. [S. Doc. No. 241, 81st Cong., 2d Sess. 2 (1950).]

Compare Thompson, *Changing Concepts of Homosexuality in Psychoanalysis*, 10 PSYCHIATRY: JOURNAL OF THE BIOLOGY AND PATHOLOGY OF INTERPERSONAL RELATIONS 183 (1947):

"The term 'homosexual' as used in psychoanalysis has come to be a kind of wastebasket into which are dumped all forms of relationships with one's own sex. The word may be applied to activities, attitudes, feelings, thoughts, or repression of any of these. In short, anything which pertains in any way to a relationship, hostile or friendly, to a member of one's own sex may be termed homosexual."

See generally Donnelly, Goldstein & Schwartz, CRIMINAL LAW 137-201 (1962).

13. Unlike the present case, specific immoral acts were clearly alleged and admitted in Dew v. Halaby, 115 U.S.App. D.C. 171, 317 F.2d 582 (1963), cert. dismissed pursuant to Rule 60 of the Supreme Court rules, after settlement by agreement of the parties, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 550 (1964). Dew was discharged as a Federal Aviation Agency control tower operator because of "at least four [admitted] unnatural sex acts with males, some of them for pay" and "smoking marijuana cigarettes on at least five [admitted] occasions." 115 U.S.App.D.C. at 172, 317

mission must at least specify the conduct it finds "immoral" [14] and state why that conduct related to "occupational competence or fitness," [15] especially since the Commission's action involved the gravest consequences. Appellant's right to be free from governmental defamation requires that the Government justify the necessity for imposing the stigma of disqualification for "immoral conduct." [16]

The Commission may not rely on a determination of "immoral conduct," based only on such vague labels as "homosexual" and "homosexual conduct," as a ground for disqualifying appellant for Government employment. For this reason, and for the reasons stated in Judge McGowan's separate opinion, we reverse the judgment of the District Court and remand the case with instructions to enter summary judgment for appellant. In my view, this does not preclude the Commission from excluding appellant from eligibility for employment for some ground other than the vague finding of "immoral conduct" here.[17]

McGOWAN, Circuit Judge (concurring).

I join in the result reached by Judge Bazelon solely for what seem to me to be the inadequacies, in terms of procedural fairness, of the notice given to appellant of the specific elements constituting the "immoral conduct" relied upon as disqualifying him for all federal employment. The consequences of this result I take to be as follows: The District Court's grant of summary judgment to appellees is reversed; and, in the light of the reason for this reversal, it is appropriate for a judgment to be entered which has the effect of restoring appellant to his original status, that is to say, one who has met the competitive examination requirements for certain grade levels and who, absent any further action by the Civil Service Commission to disqualify him, is eligible to be considered for employment by the employing agencies. This status obviously does not assure him of any federal employment; and the Commission is, of course, free to initiate

---

F.2d at 583. The court found an agency judgment that "efficiency will not be promoted by * * * [an employee whose] past did not demonstrate qualities of character, stability, and responsibility," 115 U.S.App.D.C. at 177, 317 F.2d at 588, in view of the "exacting nature of the duties and responsibilities of control tower operators." 115 U.S.App.D.C. at 176 n. 11, 317 F.2d at 587 n. 11.

14. Precise allegations of the conduct in question would also give an applicant an opportunity, not afforded in this case, to explain or contradict the allegations. There is no suggestion in this record that specific allegations of misconduct were withheld to protect confidential informants, and we need not decide whether such purpose might justify the Commission's refusal to give details of alleged misconduct. Cases involving security dismissals based on undisclosed information, such as Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46 (1950), affirmed, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951), are not applicable here.

15. Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). In that case, a state requirement that teacher applicants disclose all association mem-

berships was set aside because the state had failed to show the legitimate relationship of such disclosure to occupational qualifications sufficiently to justify the resulting inhibition of associational freedom. In United Public Workers of America v. Mitchell, 330 U.S. 75, 101, 67 S.Ct. 556, 570, 91 L.Ed. 754 (1947), the Court stated, "For regulation of employees it is * * * necessary that the act regulated be * * * reasonably deemed * * * to interfere with the efficiency of the public service." See Vitarelli v. Seaton, 359 U.S. 535, 542–543 & n. 5, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 238–239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Reich, The New Property, 73 YALE L.J. 733, 782 (1964).

16. Compare Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951); Shelton v. Tucker, supra, note 13; Bland v. Connally, 110 U.S.App.D.C. 375, 293 F.2d 852 (1961); Cf. Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 898–899, 81 S.Ct. 1743, 6 L.Ed. 2d 1230 (1961).

17. See Perkins v. Elg, 307 U.S. 325, 350, 59 S.Ct. 884, 83 L.Ed. 1320 (1939).

such further action as it chooses to exclude him from eligibility even for consideration, subject as always to appropriate procedural standards. The substantive issues which might conceivably emerge from the record developed at such a proceeding are not presently before us, and are not now to be anticipated.

Disqualification from consideration for all federal employment is not, in my view, a status which can arbitrarily be imposed upon any citizen. I think it was arbitrary, on this record, for appellant to be disqualified for "immoral conduct" and to be told, in response to his request for a specification, only that he had engaged in "homosexual conduct." It is true, as the dissent points out, that appellant came perilously close to abandoning this claim to lack of adequate notice, but I do not read the record as showing that this brink was ever finally crossed. The waiver is said to have occurred at the time of appellant's final appeal to the Commission, but, although appellant there displayed a patent preoccupation with what he conceived to be a transcending issue of principle implicit in his case, this is a common failing of litigants, especially those who are representing themselves, as was appellant at that time.

Even here, however, he reiterated his right to know exactly what he was supposed to have done which caused him to be disqualified. There are allegations embodying this issue in the complaint in the District Court; and, in the appellees' own statement of material facts in support of their motion for summary judgment, it is averred that appellant had requested specification of his "immoral conduct" in his appeal from the Division of Adjudication and that, in his appeal to the Commission, *"while not abandoning his claim that he was entitled to a resume of the adverse information * * * [he]* essentially devoted his final appeal to the contention that it is error for the Commission to rule that homosexuals are unsuitable for appointment. * * * "* (Emphasis supplied.) Neither in the

District Court nor in this court did appellees think it wise to fail to meet on the merits this procedural issue of lack of adequate notice; and counsel for appellant in this court, although apparently sharing appellant's concern with the broader aspects of the case, remained true to his professional instincts by not submerging completely his client's interest in having a job in the larger and more venturesome quest of a principle of general application. Alternative contentions are the familiar stuff of the law, and I am not prepared to say that this record falls outside this pattern.

Upon the assumption (which may or may not be correct) that the Executive Branch can freely dismiss employees from the federal service except as limited by express provision of statute or regulation, it is said that it must be *a fortiori* privileged to refuse employment to a mere applicant therefor. As does this formulation, so do I put the Constitution to one side for present purposes, not because I have ever been able to grasp the precise implications of the ancient axiom that there is no constitutional right to public employment, but because I do not read the relevant statute and regulation as contemplating the procedure followed here in disqualifying appellant. Both statute and regulation are phrased in the most general terms, and they certainly imply a wide area of discretion on the part of federal employers in choosing among applicants. But the broad letter of 5 U.S.C. § 631 is far from inconsistent with a Congressional purpose that "each candidate" who "seeks to enter" federal employment shall have a fair opportunity to assert his "fitness," both affirmatively and by way of opportunity to know of, and to defend against asserted personal shortcomings which are officially characterized as "immoral conduct" within the meaning of regulations issued in implementation of the statute. Appellant had the one in the form of competitive examinations. But, in the other respect, the legislative purpose does not seem to me to have been adequately realized.

BURGER, Circuit Judge (dissenting).

My colleagues do not agree and hence there is no opinion of the court on the basis of the remand in this case. I find myself unable to agree with either of the two opinions. Judge Bazelon reaches far out to deal with a problem which is not before us and which is essentially one of broad Legislative and Executive policy. The basic issue in the case is narrow and limited: Is there a reasonable basis for the Commission's determination that conduct of Appellant, which he asked the Commission to "assume" and which is admittedly criminal under existing statutes, affords an adequate basis for his disqualification for federal employment? However, since my colleagues do not agree with each other and each undertakes to decide a question not properly here for decision, I set forth my analysis of the case.

### (1)

Whatever the merits of Appellant's contention that "procedural due process" entitled him to a statement of the specifics of the conduct the Commission found him to have engaged in, Appellant has waived that contention by his actions and litigation position before the Commission. At every stage of his appeal within the Commission Appellant's position was a challenge to the right of the Government to inquire at all into his sexual habits, on the ground that they were irrelevant to his suitability for employment. To be sure, he also demanded to know the specifics of the conduct underlying the Commission's decision, but the essence of his position was that his private life was none of the Government's business. This is seen, for example, in his refusal at the Commission interview to respond to the Commission's request that he comment on the Commission's statement that it had evidence indicating his homosexuality. Instead of requesting details, or making a denial, Appellant responded, "I do not believe the Question is pertinent in so far as job performance is concerned." Similarly Appellant's prayer for relief to the Board of Appeals and

Review sought summary reversal of the action taken on his application—not merely disclosure to him of the adverse information in his file for purposes of rebuttal. As the Board remarked,

> The contentions which you have submitted do not materially refute the basis for the action taken, but appear to disagree * * * only with the Commission's determination that homosexual conduct is immoral in nature and does not meet requirements of suitability for the Federal service.

Appellant's request to the Board of Appeals for summary reversal of the Commission action in his case taken alone, or even together with his constant assertion of the irrelevance of his sexual habits to employment eligibility, might not suffice as a waiver of the issue of specificity. But on his final administrative appeal, to the Commissioners themselves, Appellant explicitly requested the Commission to

> assume that I have engaged in "homosexual conduct," and let me equate "homosexual conduct" with "homosexual outlet" as used in Chapter 21, pages 610–666, of *Sexual Behavior of the Human Male* by Alfred C. Kinsey, Wardell B. Pomeroy, and Clyde E. Martin, and with "homosexual responses and contacts" as used in Chapter 11, pages 446–501, of *Sexual Behavior of the Human Female* by the same authors with Paul Gebhard. (Footnotes omitted.)

In this situation the Commission had the right to take Appellant at his word and to assume he had engaged in conduct which, as indicated by his references, would have been punishable as a crime under D.C.CODE § 22–3502 (1961). Thus Appellant himself, by his litigation position at the interview, before the Board of Appeals and before the Commission, supplied the very specificity he now claims he sought. I do not believe it open to him to raise in this court the question of his right to have the Commission be more specific after relieving the Commission of

any such duty it might otherwise have had, by asking that the Commission "assume * * * homosexual conduct."

### (2)

Assuming for argument that Appellant has preserved his procedural contentions, however, I analyze the merits of those contentions. Judge Bazelon appears to adopt Appellant's argument that the due process clause of the Fifth Amendment required the Commission to disclose in greater detail its evidence against Appellant. Judge Bazelon does not in terms say so, but his view presumably is that the Commission's procedure unduly restricted the "liberty" spoken of in that amendment. I believe that position to be untenable. As a mere applicant for government employment, Appellant can hardly claim higher rights of process than one who is already a government employee. And the Supreme Court, in Cafeteria & Restaurant Workers Union Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961), pointed out that it had

> consistently recognized that * * * the interest of a government employee in retaining his job * * * can be summarily denied. It has become a settled principle that government employment, *in the absence of legislation,* can be revoked at the will of the appointing officer. (Emphasis added.)

See also Vitarelli v. Seaton, 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Bailey v. Richardson, 86 U.S.App.D.C. 248, 267, 182 F.2d 46, 65 (1950), aff'd by an equally divided Court, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951).

In sum it must be conceded that the Government in its capacity as an employer may "hire and fire," select and reject at will, restrained only as Congress by statute, the President by Executive Order or an Executive Agency by Regulation has curtailed that right. To put it another way, absent statute or authorized regulation conferring on Appellant a right to more refined procedures than given the Commission's action must stand unless its announced basis is "patently arbitrary or discriminatory." *Cafeteria Workers, supra,* 367 U.S. at 898, 81 S.Ct. 1743. See also Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). It may be that the government employee's or employment seeker's lack of procedural rights, absent statute or regulation, effectively undermines his conceded substantive right not to be excluded from employment for arbitrary reasons, see *Cafeteria Workers, supra,* 367 U.S. at 900, 81 S.Ct. 1743 (dissenting opinion); but it is hardly the province of a Court of Appeals to erect procedural safeguards thus far consistently rejected by the Supreme Court.[1]

Judge McGowan takes a different position and avoids any constitutional issue because he finds the Commission's procedures inconsistent with the congressional purpose manifested in 5 U.S.C. § 631. He relies on the following language of that section:

> The President is authorized to prescribe such regulations for the admission of persons into the civil service of the United States as may best promote the efficiency thereof, and ascertain the fitness of each candidate in respect to age, health, character, knowledge, and ability for the branch of service into which he seeks

---

1. In addition to the requirement the court now imposes on the Commission to make known the specifics of alleged disqualifying conduct, Judge Bazelon would impose a further obligation on the Commission to spell out the relationship between any such conduct and suitability for public employment. I have always thought this exclusively a policy issue for the political branches to resolve. Apart from the question whether the Constitution compels such a procedure, I see no function for it. If information concerning certain conduct may legitimately be considered by the Commission, then no such statement is needed; if, on the other hand, certain information may not properly be considered in a case, then no such statement can validate its use.

to enter; and for this purpose he may employ suitable persons to conduct such inquiries * * *.

I am unable to read this statute as creating in Appellant the rights he claims. I read it as an authorization addressed to the President, and no one else, empowering him to promulgate regulations dealing with the selection of government employees and to ascertain the fitness and ability of candidates.

The President must be presumed to know the powers conferred upon him by Section 631 to promulgate appropriate procedures for dealing with *applicants* for federal employment. Acting pursuant to that Section, President Kennedy in 1962 directed the Commission to formulate regulations dealing with adverse actions against *employees* of the departments and agencies of the federal government.[2] I intimate no view as to what the Regulations so promulgated (excerpted in note 2, *supra*) would require the Commission to disclose to Appellant were he an employee rather than simply an applicant. I point to those Regulations merely to show the manner in which they were promulgated and their purpose. As I see it this is the way in which Section 631 was intended to operate. The skeletal framework of that Section can confer no rights on Appellant Scott as an *applicant* until it has been implemented by Executive action comparable to that taken by President Kennedy with respect to adverse actions against *employees.*

### (3)

Because in my view Appellant has waived his procedural contentions I turn to a consideration of his substantive argument that homosexual conduct is an arbitrary ground for exclusion from employment. This is the argument which, by inference at least, Judge Bazelon considers open by suggesting that the Commission ought to spell out[3] the relationship between homosexual conduct and suitability for federal employment. In view of the actions of the Congress and the Executive I do not consider this question open.

The Commission implemented 5 U.S.C. § 631, *supra,* with a regulation, 5 C.F.R. § 2.106 at times here relevant,[4] which provides *inter alia* that an eligible applicant may be denied employment because of immoral conduct. I assume no one would be so brash as to argue that this regulation is not authorized by the statute. See Dew v. Halaby, 115 U.S.App.D. C. 171, 317 F.2d 582 (1963), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L. Ed.2d 550 (1964). Congress expressed a determination, which would seem to be reasonable, that the character and habits of an individual may have as much to do with his suitability for federal employment as his knowledge and ability.

Wisely or not Congress, in common with a host of other law making bodies, has defined as criminal the homosexual conduct stipulated to by Appellant in his final appeal at the Commission. Whether it is sound legislative policy to attempt to deal with sex deviates under the criminal law is not open to judges but one can hardly doubt that such conduct is regarded as immoral under contemporaneous standards of our society. This court is in no position, then, to overturn, or even

---

2. Exec.Order No. 10987, 27 Fed.Reg. 550.
   The Commission has provided that employees shall receive "at least 30 full days' advance written notice stating any and all reasons, specifically and in detail, for the proposed action." 5 C.F.R. § 752.202(a) (1964).
   If the employee answers, the agency shall consider the answer in reaching its decision. The employee is entitled to answer personally, or in writing, or both * * *. The right to answer personally includes the right to answer orally in person by being given a rea-

sonable opportunity to make any representation which the employee believes might sway the final decision on his case, but does not include the right to a trial or formal hearing with examination of witnesses.
5 C.F.R. § 752.202(b) (1964).

3. This suggestion emanates only from one member of the court and is not therefore a mandate of the court.

4. The current citation is 5 C.F.R. § 731,-201(b) (1964).

to question, an Executive determination authorized by Congress that homosexual conduct warrants a disqualification from federal employment. In all events it was no abuse of discretion to reject Appellant's application for the sensitive position of personnel officer, a station requiring a balanced approach to human relationships and a position of great power in the selection and assignment of other federal employees. Congress of course could, as a matter of legislative policy, provide for example that sex deviates, chronic alcoholics, former felons and various other categories suffering infirmities would be eligible for federal employment in non-sensitive areas. But it is not our role to embark on such policy ventures.

In Dew v. Halaby, *supra,* which is controlling on the substantive aspects of this case both for this court and the Commission, a federal employee was discharged for pre-employment homosexual conduct at a time when Commission regulations expressly provided that facts sufficient to disqualify an applicant for a position were likewise sufficient to justify discharge of an employee. We upheld Dew's discharge, which was based upon the same regulation involved in the present case. We noted that Dew did not contend that the homosexual conduct involved was not condemned by that regulation: "in fact, it is difficult to see how he could ask a court to hold that the agency erred in so considering it." *Id.* at 175, 317 F. 2d at 586. (Footnote omitted.) We did not question that the regulation itself was valid.

As Dew v. Halaby recognizes, our inquiry into the merits of Appellant's disqualification, once he had asked that his involvement in homosexual conduct be assumed, can seek only to discern whether the Commission's action was rationally based or whether, on the other hand, its action was arbitrary and capricious. *Id.* at 178, 317 F.2d at 589.[5] And that

case is authority that homosexual conduct is not an irrational ground for disqualification.

Since precedent, contemporary standards, and common sense require rejection of Appellant's substantive argument, and since he can point to no statute or regulation granting him more process than he received, I would affirm the summary judgment for Appellees.

---

5. Moreover, a complaint which merely makes a conclusory allegation of administrative arbitrariness or caprice does not state a claim upon which relief may be granted. "Substantiating allegations" must be made. Hunter v. McLaughlin, 102 U.S.App.D.C. 293, 294, 252 F.2d 857, 858 (1958).