Mary Lou SPENCER on her own behalf and on behalf of all persons similarly situated, Plaintiffs,

v.

Shirley TOUSSAINT et al., Defendants.

Civ. A. No. 74–70669.

United States District Court,
E. D. Michigan S. D.

Feb. 18, 1976.

Judith D. Doran, Gabe Kaimowitz, Michigan Legal Services, Detroit, Mich., for plaintiffs.

Michael A. Hurvitz, Asst. Corp. Counsel, Detroit, Mich., for defendants.

## OPINION OF THE COURT

CORNELIA G. KENNEDY, District Judge.

This is a class action brought on behalf "of all persons seeking employment in the City of Detroit, who require approval by the Detroit Civil Service Commission, who have applied since November 19, 1970, and have been denied Commission approval without hearing, because of medical histories indicating they have been treated voluntarily or involuntarily, for alleged or proven mental illness and who subsequently have been discharged from treatment or declared restored to soundness of mind by the State." (See Order Certifying a Class, dated August 12, 1975.)

The trial held December 23 and 26, 1975 was limited to the class action issues, specifically the rights of the Plaintiff class to declaratory or injunctive relief.

The parties previously entered into a Stipulation of Facts, dated April 15, 1975, and filed June 2, 1975. This Stipulation contains most of the relevant facts required for determination of the issues to be considered here. The testimony and exhibits presented to the Court at the trial fleshed out the stipulation and added information regarding the Civil Service Commission's procedure and policies and its reasons for certain actions.

Plaintiff Mary Lou Spencer applied for employment as a Transportation Equipment Operator (bus driver) with the City of Detroit on May 29, 1973. The Civil Service Commission of the City of Detroit, with a few limited exceptions, is in charge of hiring all new City employees. All applicants are required to complete a written application for employment (Exhibit 7), which includes a portion entitled "Health." Among the questions asked are:

Have you ever had a nervous breakdown?

Have you ever had any of the following:

. . . Nervousness.

Further, each applicant is required to complete a "Medical History Record" (Exhibit 6). Ms. Spencer answered that she had had a nervous breakdown and had been hospitalized for this condition twice in 1969. She was requested to sign authorization to permit the Civil Service Commission to obtain information from the two places at which she had received treatment for her past mental illness. Had she refused to supply such authorization, her application would have been rejected.

Summaries of Ms. Spencer's diagnoses, treatment, prognosis and course in the two hospitals where she had been treated were obtained and referred to the Civil Service Commission's Medical Examiner, Joseph Evans, M.D. Doctor Evans, an experienced general practitioner, was the sole Medical Examiner then utilized by the Civil Service Commission. He was a contract physician rather than a City employee.

Doctor Evans, who testified at the trial, had no present recollection of Ms. Spencer's case. However, the records of the Civil Service Commission establish that he recommended she be denied employment as a bus driver "on medical reasons relative to [her] past mental illness." (See also Stipulation ¶ 5.) Doctor Evans testified that this rejection was made on the basis of the past records of Ms. Spencer's mental illness and the diagnoses made at that time by the psychiatrists and psychologists who had seen her then as disclosed in those records. He did not base his recommendation on his examination of her.

Ms. Spencer had previously passed a written examination for the position of bus driver. She had also been interviewed orally. A summary of that interview is found in Exhibit 8. She was not rated on experience, practical or academic training, etc., because of the medical

rejection. Her application was marked "Medical reject."

She was sent a card (Exhibit 14) that stated: "You were unsuccessful in this examination for the reasons checked." [Thereupon there is a list of several reasons for possible rejection.] "Below a passing percent on physical and personal qualifications." The card received by Ms. Spencer had the word "Physical" circled, and a box preceding this line was checked. The card contains no statement of any right to appeal the failure to pass the examination.

Ms. Spencer's attorney wrote to the Civil Service Commission to clarify the reason for denial of employment. (Exhibit 1) She received in response, a letter (Exhibit 2), stating that Ms. Spencer had been disapproved for employment as a Transportation Equipment Operator after her records from Kalamazoo State Hospital had been reviewed by the Medical Examiner. The letter further stated that Ms. Doran (Plaintiff's attorney) could telephone for further information. During a telephone conversation between Ms. Toussaint, the writer of the letter, and Ms. Doran, Ms. Doran was advised that Ms. Spencer could come in and review her medical records with Doctor Evans. This information was conveyed to Ms. Spencer. No such conference was requested.

Neither Ms. Doran or Ms. Spencer was advised of any procedure for a hearing or an appeal to contest the Medical Examiner's conclusion. (See Stipulation ¶ 10.)

Doctor Evans testified that depending upon the specific job for which an applicant was being considered, he might recommend that he or she be denied employment where there was a past history of mental illness. Although for some jobs he would consider the nature of the prior mental illness of an applicant and recommend the applicant depending on all the circumstances, e.g., the severity of the illness, in the case of a bus driver with a given past diagnosis of mental illness, that person would be rejected. He stated that he did not want to recommend an employee for a position of bus driver, responsible for the safety of others, if there were a possibility of something happening.

Doctor Curtis Thompson, D.O., who has been in private practice for 19 years, is the current Medical Examiner for the Civil Service Commission. He also has been engaged in general practice and is a contract physician. He testified that although he had not yet had the occasion to do so, he would reject applicants solely on the basis of past medical history of mental illness if the prognosis were poor. He testified that the job of bus driver involves a great deal of stress and that the safety of a large number of persons depends upon a bus driver. He further testified that there is no provision under the present Civil Service procedures to refer applicants for examination as to present mental health. He does interview persons who are returning to employment after leaves resulting from mental problems.

In some instances, he has seen individuals who still suffer from delusions even though a psychiatrist has given them a statement that they can return to their former work. It was his opinion that the psychiatrists were not always familiar with the type of work the employees were required to perform. Finally, Doctor Thompson expressed the medical opinion that no psychiatrist would guarantee that a prior mental illness would not reoccur.

Doctor Thompson was not acquainted with Ms. Spencer and had not been employed by the City at the time her application was rejected.

Mr. John D. Hammel, who held the position of Intermediate Personnel Examiner and who has a Master's Degree in Sociological Research, had conducted Ms. Spencer's oral interview. He never rated Ms. Spencer since she was rejected for medical reasons. He testified that it was he who wrote the notation "Medical reject" on her Civil Service forms, but that this was solely a clerical entry from information received by him from the Medical Examiner's Office.

Ms. Spencer testified regarding her hospitalization for mental illness, her prior job history, her education, etc. She confirmed that she was told she could informally discuss her medical rejection with Doctor Evans but did not choose to do so. She further testified that she had not seen a psychiatrist or psychologist from the time she left Kalamazoo State Hospital until the time she applied for employment with the City of Detroit. As the Stipulation of Facts indicate, she saw a psychiatrist in December of 1973, a number of months after her rejection, whose diagnosis was "No present mental disorder." Ms. Spencer obtained full time employment April 1, 1974, with the State of Michigan Department of Social Services. She has recently voluntarily quit that employment.

The Civil Service Commission's Physical Standards (Exhibit 11), provide in part:

14. Mental Illness: The City will not consider any applicant who has been released from a hospital for less than one year.

The Civil Service Commission Rules (Exhibit 3), provide in part:

RULE IV    COMPETITIVE EXAMI-
NATIONS

Section 1.    Nature of Examinations.

.    .    .    .    .  ·

(b) The examination may consist of one or more of the following parts: Appraisals of training, experience or general qualifications, tests or skills, knowledge, aptitudes or physical fitness in any combination, with such weights as the Commission shall determine by resolution and may be oral, written or demonstration of working capacity, in whole or in part.

.    .    .    .    .

Section 4.    Medical Examination.

Section 5.    Appeal of Rating on Examination:

(a) Any person who believes that the rating he received on an examination is improper and erroneous, must appeal such a rating to the Commission, in writing within thirty (30) days of the date the notice of his standing in the examination was mailed to him.

(b) When such an appeal is made, it must set forth substantial reasons that the rating given him was improper and erroneous and further, that the correction of such alleged improper or erroneous rating would entitle him to a higher standing on the eligible register.

RULE V    ELIGIBLE LIST

.    .    .    .    .

Section 3.    Amendment of eligible lists:

(a) An amendment may be made to an eligible list upon approval by the Commission under the following conditions:

.    .    .    .    .  .

(2) The applicant has submitted, timely, valid evidence of qualification, the lack of which was a bar to successful completion of the examination.

The civil action was originally assigned to another Judge of this Court and was reassigned to the undersigned on May 30, 1974. In denying Defendants' Motion to Dismiss, the predecessor Judge ruled in an Opinion rendered from the bench that the appeal procedure provided in Rule IV "Does not apply to persons in Plaintiff's (Mary Lou Spencer) position." He held, since Plaintiff passed her examination, she could not claim "An improper examination rating," and concluded "Thus, the adequacy of the remedy for Plaintiff's purposes is doubtful at best." In this same Opinion, Plaintiff's claims insofar as they were based on 42 U.S.C. § 1981 and § 1985 were dismissed.

Plaintiffs' present claims rest on a violation of § 1983 and of Fourteenth Amendment rights. Several theories are advanced to support the claim of constitutional violation. First, Plaintiffs claim that they may not be denied employment by a public body without being accorded

a due process hearing. Second, they argue that in denying employment based on prior history of mental illness, the Defendants impose an impermissible conclusive presumption on the class, thus denying Plaintiffs due process of law. Third, they maintain that to deny persons who "have been treated, voluntarily or involuntarily, for alleged or proven mental illness and who subsequently have been discharged from treatment or declared restored to soundness of mind by the State," employment because of past mental illness while not examining other applicants to determine their mental health is a denial of equal protection of the law, or of a due process right to fair consideration for public employment. Finally, Plaintiffs assert that inquiry into the prior mental health of applicants should be proscribed as an invasion of a person's right to privacy.

In regard to the claims of violation of due process, the threshold question is the nature of Plaintiffs' right or privilege to be considered for public employment. As stated in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972):

> [T]he Court has fully and finally rejected the wooden distinction between "rights" and "privileges" that once seemed to govern the applicability of procedural due process rights.[9]

[9] In a leading case decided many years ago, the Court of Appeals for the District of Columbia Circuit held that public employment in general was a "privilege," not a "right," and that procedural due process guarantees, therefore were inapplicable. *Bailey v. Richardson,* 86 U.S.App.D.C. 248, 182 F.2d 46, aff'd by an equally divided Court, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352. The basis of this holding has been thoroughly undermined in the ensuing years. For, as Mr. Justice Blackmun wrote for the Court only last year, "this Court now has rejected the concept that constitutional rights turn upon whether a government benefit is characterized as a 'right' or as a 'privilege'." *Graham v. Richardson,* 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534. [Other citations omitted.]

408 U.S. at 571, 92 S.Ct. at 2706.

*Roth* discussed and defines the "liberty" guaranteed by the Fourteenth Amendment insofar as it relates to public employment. Quoting, with approval, from *Meyer v. Nebraska,* the Court stated:

> Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire a useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men. *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042.

408 U.S. at 572, 92 S.Ct. at 2706.

Speaking for the Court, Justice Stewart stated:

> There might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated.

408 U.S. at 573, 92 S.Ct. at 2707.

The Court went on to hold that *Roth* was not such a case. It was not such a case, the Supreme Court said, because:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." [Citations omitted.] In such a case, due process would accord an opportunity to refute the charge before University officials. . . .

> Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that fore-

closed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case. For "[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury . . .." *Joint Anti-Fascist Refugee Committee v. McGrath, supra,* 341 U.S. 123, at 185, 71 S.Ct. 624, at 655, 95 L.Ed. 817 (Jackson, J., concurring). See *Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131. The Court has held, for example, that a State, in regulating eligibility for a type of professional employment, cannot foreclose a range of opportunities "in a manner . . that contravene[s] . . . Due Process," and *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, and, specifically, in a manner that denies the right to a full prior hearing. [Citations omitted.] In the present case, however, this principle does not come into play.

408 U.S. at 573–74, 92 S.Ct. at 2707.

The Court also held that the plaintiff in *Roth,* a nontenured teacher at a state university, did not have a "property" right in his position that would entitle him to a due process hearing regarding a decision not to renew his contract. 408 U.S. at 576–78, 92 S.Ct. 2701.

■ Applying these standards of *Roth* to the instant case, the evidence disclosed that persons with histories of prior mental illness were not foreclosed from all employment by the Civil Service Commission of the City of Detroit but only from certain types of employment, such as bus driver, in which they would be entrusted with the personal safety of others. There is no evidence that the City in declining to employ Ms. Spencer or other members of the class, imposed on the class a stigma or other disability that foreclosed their freedom to take advantage of other employment opportuni-ties. Indeed, Ms. Spencer has subsequently been employed in a responsible position with the State of Michigan. The postcard sent through the mails to advise her of her failure to secure employment as well as her Civil Service file, have only the notations "Medical reject," or rejected for "Physical" reasons, neither of which carries any social stigma. The circumstances of denial of employment in the instant case simply fails to meet the "interests in liberty" standards required by *Roth.* There would seem to be no doubt that the property interests of the present Plaintiffs in City jobs were less substantial than that of the *Roth* plaintiff.

Plaintiffs rely upon *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 and *Truax v. Raich,* 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915). Both these cases, however, were distinguished by the United States Supreme Court in *Roth* on the basis that the range of employment opportunities from which the plaintiffs in those cases were foreclosed were so much broader. They are distinguishable from the instant case for the same reasons.

Accordingly, the Defendants are not required to provide due process hearings to persons denied employment with the City.

■ The second aspect to Plaintiffs' due process argument is their claim that Defendants' denial of employment based on past records or mental illness, amounts to a conclusive presumption of present unsuitability and that such an irrebuttable presumption violates the due process clause.

The Court is of the opinion that the same "liberty" or "property" interest that must exist before a due process hearing is mandated, applied to this claim. See *Vlandis v. Kline,* 412 U.S. 441, 452, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639–40, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

In addition, the present record is deficient to establish that the Civil Service Commission adopted the irrebuttable

presumption Plaintiffs assert. Those cases in which the Supreme Court has found impermissible conclusive presumptions, those presumptions have been embodied in legislative or regulatory agency pronouncements. See *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), *U.S. Department of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973), *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), and cases cited therein. In the instant case the Civil Service Commission did not deny all employment to persons with past mental illness.[1] It had their records reviewed by a licensed physician who made a judgment based upon the particular job for which the person was applying. Even if the physician made no independent judgment in particular cases, he would at most be displaying a medical bias which is not the claim made in Plaintiffs' conclusive presumption argument.

Plaintiffs' next argument is that it is improper for the City to deny employment to persons with histories of mental problems while not examining other applicants regarding their mental health.

It is somewhat unclear whether Plaintiffs' position is that it is a denial of equal protection to refuse to hire persons with histories of mental illness while making no inquiry regarding the mental condition of other applicants, see *Scott v. Macy,* 121 U.S.App.D.C. 205, 349 F.2d 182, 184 (1965) (Bazelon, J.), and/or whether they claim that to deny employment as a bus driver to persons with such histories violates some due process right to fair and nonarbitrary consideration for public employment. See *Scott v. Macy,* 121 U.S.App.D.C. 205, 349 F.2d 182, 186 (1965) (McGowan, J.). However, it is not critical which analysis is used, since the question under either will be whether the City's actions are measures reasonably designed to promote legitimate purposes.

■ The procedure presently utilized of examining only past mental history to screen applicants, is, on the record presented here, a reasonable method. The City has not only the right, but the duty, as a common carrier to exercise a high degree of care in the selection of drivers for its buses. Knowledge of history of mental problems could be the basis for liability of the City in the event that a bus driver injured some other persons. Cf. *Perin v. Peuler,* 373 Mich. 531, 130 N.W.2d 4 (1964). Concern for the safety of passengers and other users of the public streets is appropriate in the selection of bus drivers.

■ The record before the Court is very slight regarding the question of whether a history of mental illness establishes that a person is unfit to hold a position as bus driver. The only testimony is that of Doctor Thompson who said that no psychiatrist would say that such problems would not reoccur. Both Doctors Thompson and Evans indicated that they believed the position of bus driver imposed considerable strain and pressure on an employee. While Doctor Thompson does not practice in the specialty of psychiatry, he is licensed to practice in that area of medicine. In addition, he does examine employees of the City who are returning to work after absences resulting from mental problems. Plaintiffs produced no testimony to the contrary. On this record the Court concludes that it is not unreasonable to exclude persons with a history of mental illness from positions such as bus driver.

■ Plaintiffs do not urge that persons with present mental illnesses be employed as bus drivers or, indeed, in any capacity. Plaintiffs do suggest that psychiatric examinations for all applicants for the position of bus driver would be

---

1. As noted above the Civil Service Commission's Physical Standards (Exhibit 11) do deny employment to applicants who have been hospitalized for treatment of mental illness within one year of their application. This rule is not applicable to the named Plaintiff and the parties have not briefed or argued the permissibility of such a rule.

preferable and would not penalize those who have sought prior treatment or received prior treatment. They note that tests to identify present mental illness or psychological attitudes are currently given to applicants for positions as police officers. Such a practice might well be desirable but it is not constitutionally required. The fact that the method selected results in some inequality does not authorize the Court to establish a superior one. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Plaintiffs have no right to require that the Civil Service Commission screen its applicants in such a way that others are likewise excluded.

Plaintiffs urge that the reliance by the City on prior histories of mental illness will have the undesirable effect of discouraging persons from seeking treatment for such conditions. It should be noted, parenthetically, that the individual Plaintiff here did not voluntarily seek treatment. The use of prior records of mental illness may have the socially undesirable side effect on seeking treatment insofar as the individuals concerned are involved. However, it is the legislative and the executive branches of government that are charged with weighing these undesirable consequences against the needs of the City as an employer to have such information. If current psychiatric exams were routinely required inquiries into the same histories of prior treatment would be made.

■ Finally, Plaintiffs challenge the City's right to inquire into past histories of mental illness. They suggest that such inquiries are an invasion of privacy and should be constitutionally prohibited. However, mental illness, like all prior illness, is of interest to an employer, given the City's responsibility to the public. The forms filled out by applicants for positions with the City of Detroit cover a broad range of medical inquiries. Current examinations are conducted regarding most, if not all of the other conditions, but the prior medical histories are part of those examinations according to both Doctors Evans and Thompson. Any

right to privacy as to such histories must be subordinated to the interest of the employer in obtaining such information. The record discloses no discrimination as to inquiries regarding histories of mental illness as opposed to inquiries of histories of other medical problems.

The Court is of the opinion that rejected applicants for employment with the City are not constitutionally entitled to a hearing.

■ Plaintiffs' argument that Defendants provided no notice of a right to appeal in effect raises a pendant State law claim. Insofar as the City's procedure provides an appeal, Plaintiffs are entitled to reasonable notice thereof. Despite the prior ruling in this case by the Judge to whom it was previously assigned that the Civil Service Rules and Regulations did not provide for an appeal of the Medical Examiner's conclusion that Ms. Spencer was not qualified for the position of bus driver, and the apparent acquiescence in that ruling as evidenced by the Stipulation of Facts (¶ 14), this Court is of the opinion that a proper construction of Civil Service Commission Rules IV and V (Exhibit 3), the relevant portions of which are set out above, requires a different conclusion. Rule IV specifically defines what is included in the examination. Section 1(b) of that rule states that "physical fitness," may be part of the examination. While it is true that Rule IV, Section 5, speaks of appealing a standing on "the eligible register," Rule V permits "amendment of eligible list." One basis for such amendment is where "the applicant has submitted, timely, valid evidence of qualification, the lack of which was a bar to successful completion of the examination." Thus, Plaintiff Spencer or any other member of the class had the right to present evidence of present good mental health to the Commission.

If Plaintiff had applied for a job which required a college degree and the postcard she received indicated that she had been unsuccessful because of failure of the education or training requirement, clearly she would be entitled to submit

valid evidence of that college degree under Rule V, Section 3(a)(2). The fact that she had not been placed on the eligible register because of that failure would not seem to preclude her right to appeal her rating on examination.

The Court sees no basis for treating the failure to pass one portion of the examination differently than the successful completion of another portion of the examination. The phrase "valid evidence of qualification" used in Rule V, Section 3(a)(2), indicates extrinsic evidence of some qualification and does not appear to relate to objections to the scoring on written examinations, the narrow construction of the appeal rule that is suggested by Plaintiffs.

Any other construction of these rules would mean giving a person a failing grade on an examination and thus depriving that person of listing on the eligible register, would deprive the person of all rights of appeal. Such a narrow construction of these rules is unwarranted.

■ Because City employees have apparently also misconstrued the breadth of these rules, the class of Plaintiffs is entitled to be advised that they may, in fact, present "valid evidence of qualification" in the form of present psychiatric reports or other evidence of present mental health if they still wish employment at this time.

Any objections to the timeliness of such requests will be overruled in view of the conduct of City employees in failing to advise applicants of this right to appeal when they inquired. In view of the lapse of time that has occurred, the Court believes it would be impossible to determine on an individual basis whether such inquiry had been made.

As indicated at the trial only issues relating to the rights of the class to injunctive or declaratory relief were to be litigated in that part of the proceedings. The Court has ruled on those matters. Any additional rights which the named Plaintiff may have to damages, any special orders regarding the processing of

an appeal, or other relief will be considered upon the completion of the trial of this action.