TAPLICK, Petitioner-Respondent, v. CITY OF MADISON PERSONNEL BOARD, Appellant.†

Court of Appeals

*No. 78–531. Submitted on briefs March 12, 1979.—*
*Decided April 13, 1979.*
(Also reported in 280 N.W.2d 301.)

† Petition to review granted.

For the appellant the cause was submitted on the briefs of *Henry A. Gempeler,* city attorney, and *Larry W. O'Brien,* assistant city attorney.

For the petitioner-respondent the cause was submitted on the brief of *Rameker & Rudoy, S.C.,* of Madison.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J. William Taplick (petitioner) applied for a position as a Programmer III with the city of Madison Data Processing Division in the spring of 1977. He had previously been employed by the city in another capacity, but he was not a city employee at the time of the application here under consideration.

The city of Madison has enacted a civil service ordinance regulating city employment. Section 3.35(6)(c) of that ordinance provides that the city personnel director may refuse to examine applicants for city employment or to certify such applicants as eligible therefor upon specified grounds.[1]

Petitioner was informed by a letter from a city personnel technician that he had been "screened out" of the

---

[1] Sec. 3.35(6)(c) is set forth in part II of this opinion. See pp. 8–9 *infra.*

selection process and would not be considered for the position. No reasons were given for the decision not to certify petitioner as eligible for further consideration.

Petitioner appealed the decision to the city personnel board. At its meeting on June 14, 1977, the board received a written opinion by the city attorney concluding that the appeal procedures set forth in the civil service sections of the Madison Gen. Ordinances provided a right to appeal only to city employees, and that the board was without jurisdiction to hear appeals by non-employees such as petitioner. In apparent reliance on this opinion, the board voted not to hear petitioner's appeal. At a subsequent meeting on July 6, 1977, the board affirmed its earlier decision and again voted to deny the appeal.

Petitioner petitioned for a writ of certiorari to review the board's action in Dane County circuit court. The trial court found that, while petitioner "probably does not have standing under the applicable ordinances and rules" to appeal the screen-out decision, petitioner has a constitutional due process right to a fair hearing on the reasons for that decision before either the secretary of the personnel board or the board itself. The trial court issued an order on October 3, 1978 requiring such a hearing.[2] The city appeals from this order.

---

[2] Order dated October 3, 1978, by Hon. Richard W. Bardwell, Circuit Judge for Dane County.

IT IS FURTHER ORDERED AND ADJUDGED that the petitioner, William C. Taplick, be provided a fair hearing before either the Secretary of the Madison City Personnel Board or before the Madison City Personnel Board whereby the petitioner will be afforded a reasonable opportunity to refute the factual reasons of the Madison City Personnel Director for refusing to certify the petitioner as being eligible for the position vacancy of Programmer III, Data Processing Division of the City of Madison Civil Service System.

I.

The pertinent provisions of the Madison Civil Service Ordinance in effect at the time petitioner attempted his appeal to the personnel board[3] are as follows:

Sec. 3.35(1). All City officers and employees . . . shall be selected . . . pursuant to this ordinance, . . . .
Sec. 3.35(3)(f). The Board *shall hear appeals* from *any action* taken by the Personnel Director in *any matter* arising under Section 3.35, upon the application of *any interested party.* (Emphasis supplied.)

Under the scheme of this ordinance, the personnel director was authorized to screen out job applicants on the basis of the designated criteria listed in sec. 3.35(6)(c). "Any action" taken by him under the civil service ordinance was subject to appeal as a matter of right by "any interested party" under sec. 3.35(3)(f). The plain meaning of these words would seem to extend to non-employees as well as to employees the right to appeal a decision of the personnel director in screening job applicants.

Another section of the ordinance charges the personnel board with the initial responsibility to develop rules for administering the provisions of the civil service ordinance, but reserves approval power of such rules in the common council. Section 3.35(4) provides:

---

[3] The civil service ordinance was amended by the common council in October, 1977, while petitioner's writ was pending in circuit court. Among other changes, the city revised sec. 3.35(3)(f) to read as follows:

The Board shall hear appeals in any matter authorized pursuant to Section 3.35 or the Personnel Rules in accordance with the appeal procedures set forth therein; provided, however, that there shall be no appeal to the Personnel Board in any matter which is grieved or grievable under a labor agreement with the City.

This amendment, which was not retroactive, did not affect petitioner's right of appeal under the provisions applicable at the time he attempted to appeal.

The Personnel Board shall *formulate* rules and regulations for the administration of the said civil service system, which, with amendments thereto, *shall be subject to approval by the Common Council.* The provisions of all such rules and regulations shall be construed to be consistent with the provisions of the Madison General Ordinances. (Emphasis supplied.)

Prior to October, 1975, the personnel board rule pertaining to appeal procedure contained language similarly broad as that contained in the ordinance, providing that city employees "or any other person aggrieved" by "any action" of the personnel director could appeal to the board within specified time frames. In September, 1975, the board proposed a change in that rule in the form of a resolution revising the rule to limit the right of appeal to "employees" who were "aggrieved by any action as specified in Madison Gen. Ordinance 3.35(11)." Section 3.35(11) deals with decisions affecting suspension, discharge, layoffs, discipline and other personnel matters pertaining solely to present employees of the city.

The resolution was adopted by the common council on September 16, 1975. Consequently, at the time of petitioner's attempted appeal, the applicable ordinance appeared to grant him the right to appeal a screen-out decision to the personnel board, while the rule under which the ordinance was administered restricted the right of appeal to present employees and to employment disputes other than job screening decisions.

Petitioner argues that the personnel board cannot establish rules which limit or withhold rights granted by city ordinances. Were the revised rule a product of the unilateral action of the board, we might be inclined to agree with this contention. Under the ordinance, however, the board is not empowered to adopt rules, but only to "formulate" them. The power to enact them resides in the council.

In considering a Milwaukee ordinance which empowered a city board to adopt rules subject to the approval

of the common council, the Wisconsin Supreme Court held that the council's approval had the effect of incorporating the rules into the body of the ordinance. *State ex rel. Milwaukee v. Milwaukee E.R.&L. Co.*, 144 Wis. 386, 393, 129 N.W. 623 (1911). In that case the court said:

The rules adopted by the board of public works having been ratified and approved by the common council, they became to all intents and purposes part and parcel of the ordinance passed by the common council . . . and really make it complete.

That the council's action in approving the revised rule in this case was intended to restrict the right of appeal to present employees and to certain subjects of dispute is clear from the recitals in the resolution it adopted which stated its purpose as "[l]imiting the right of appeal to the City Personnel Board to those aggrieved by any action as specified under Section 3.35(11) of the Ordinances." Such recitals of purpose "are a part of the resolution" which may be consulted to determine the intent of the council. *Lake Superior Dist. P. Co. v. Public Service Comm.*, 235 Wis. 667, 672, 294 N.W. 45 (1940).

Consequently, under the revised appeal rule adopted by the common council, petitioner had no right to appeal his screen-out to the personnel board. Finding no right of appeal in the ordinance, as interpreted by the board and council, we must examine petitioner's constitutional claims.[4]

---

[4] An argument might be made that the action of the common council in approving the rule limiting the right of appeal was, in effect, an amendment to the ordinance, and that such amendment could only be effected by another ordinance and not, as here, by resolution. *See, e.g.*, 5 McQuillin, *Municipal Corporations* sec. 15.02, at 42 *et seq.* (3rd ed. 1969); 6 McQuillin, *Municipal Corporations* sec. 21.04, at 199 (3rd ed. 1969); *WERC v. Teamsters Local No. 563*, 75 Wis.2d 602, 613, 250 N.W.2d 696 (1977).

The parties have not raised, briefed, or argued this possible issue. The record does not establish that the appeal ordinance, as

## II.

The issue presented is whether petitioner has a constitutional right to a statement of the reasons he was screened out of competition for city employment at the first stage of the selection process and to a hearing on those reasons. The resolution of that issue depends on the nature of the interest of which petitioner claims he was wrongfully deprived, and a determination whether that interest falls within the protection of "liberty" or "property" under the fourteenth amendment due process clause.[5] *Board of Regents v. Roth,* 408 U.S. 564, 571 (1972).

■

Under the reasoning of the *Roth* case, which was reiterated in *Bishop v. Wood,* 426 U.S. 341 (1976), the due process clause of the federal constitution does not protect individuals against all forms of arbitrary or erroneous governmental action, but only against governmental acts which deprive the individual of life, liberty, or property interests. Only when the interest in which an individual

---

effected by the prior appeal rule, was ever extended to non-employees. The minutes of the July 6, 1977, personnel board meeting contain a representation by a member of the city attorney's office that opinions of that office had "consistently held that the appeal procedure excluded any individual who was not a permanent City employee." The opinion of the city attorney relied on by the board in rejecting petitioner's appeal was based upon his construction of the entire civil service ordinance (without reference to the rule) as providing rights only to permanent city employees. Municipal resolutions may under some circumstances, as to which this record is silent, have the full force and effect of ordinances. *See* 5 McQuillin, *supra,* sec. 15.02, at 46, and sec. 15.06, at 56 *et seq.;* 6 McQuillin, *supra* ch. 21, ata 190 *et seq.; Wisconsin Gas & E. Co. v. Fort Atkinson,* 193 Wis. 232, 243–44, 213 N.W. 873 (1927), and cases cited therein.

For these reasons we do not deem it appropriate to decide an issue not raised by either party.

[5] "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. 14.

claims a "right" can be found to fit within one of these categories does governmental deprivation of the interest trigger the procedural protections of due process such as notice of facts relied upon for the deprivation and an opportunity to challenge those facts.[6]

Both the reasoning and the methodology employed by the *Roth* and *Bishop* courts have been adopted by the Wisconsin Supreme Court in *DH&SS v. State Personnel Board,* 84 Wis.2d 675, 267 N.W.2d 644 (1978), and *State ex rel. DeLuca v. Common Council,* 72 Wis.2d 672, 242 N.W.2d 689 (1976). Under that methodology, we examine the liberty and property interests asserted by petitioner in this case, and claimed to entitle him to procedural due process.

## LIBERTY INTEREST

Section 3.35(6)(c) defines nine specific grounds on which the personnel director is entitled to exclude a job applicant from further consideration for public employment as follows:

The Personnel Director may refuse to examine the applicant, or after examination to certify an eligible, who is found to lack any of the preliminary requirements established for the examination for the position or employment for which he applies, or who is physically so disabled as to be rendered unfit for the performance of the duties of the position to which he seeks appointment, or who is addicted to the habitual use of intoxicating liquors to excess or has been guilty of any crime or of infamous or notoriously disgraceful conduct, or who has been dismissed from the public service for delinquency

[6] The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite. *Roth,* 408 U.S. 564, 569–70.

or misconduct, or who has made a false statement of any material fact; or directly or indirectly shall give, pay or promise to give any money, service or other valuable thing to any person for or on account of, or in connection with, his test, or appointment; or has practiced, or attempted to practice any deception of fraud in his application, in his certificate, in his examination or in securing his eligibility or appointment, or refuses to furnish testimony as required by law.

The enumerated grounds fall into two categories. An applicant may be screened out if he is "found to lack any of the preliminary requirements" for the job, and is thus unqualified. The remaining reasons for screen-out pertain to the applicant's physical and moral fitness for the job.[7]

The essence of petitioner's claim is that since most of the specific criteria included in the second category pertain to his character and integrity, a screen-out decision which may have been based upon one of them is a decision affecting his reputational liberty interests under the due process clause. This contention must be rejected under the holdings of *Roth, Bishop* and *DH&SS v. State Personnel Board, supra.* While *Roth* recognized that " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential,' " 408 U.S. 564, 573, it held that the governmental decision not to renew the teaching contract of a nontenured university professor did not affect the professor's liberty interest where the reasons for that deci-

---

[7] Petitioner asserts that none of these grounds pertain to him. He alleges that he was previously found qualified by the city for a position requiring identical or more stringent professional qualifications than those required by the position here applied for, and offers to prove that none of the negative grounds for disqualification are true in his case. We note these assertions but make no assumptions as to their veracity in determining this appeal.

sion were not specified. The court found "no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.*

In *Bishop, supra,* the court expanded the *Roth* holding in a case where the reasons for discharging a tenured police officer were communicated to him, but were not made public. There, as here, the officer had argued that the reasons were so serious that they constituted a "stigma" that could damage his reputation, and that none of the reasons were true. The court held that neither contention raised a protected liberty interest.

Since the . . . communication was not made public it cannot properly form the basis for a claim that petitioner's interest in his "good name, reputation, honor, or integrity" was thereby impaired. . . . A contrary evaluation . . . would penalize forthright and truthful communication between employer and employee . . . . Even [assuming the falsity of the proffered reasons] the reasons stated to him in private had no different impact on his reputation than if they had been true. 426 U.S. 341, 348–49.

The same analysis was employed by the Wisconsin Supreme Court in *DH&SS v. State Personnel Board, supra,* in rejecting the discharged employee's similar claim.

In this case, no reasons were given for the personnel director's action. Even assuming that all the criteria stated in the ordinance upon which the action could be taken adversely affected petitioner's reputation, the decision (and thus the implicity damaging rationale behind the decision) was communicated privately to petitioner in the form of a letter. There is no implication in this record that petitioner's reputation in the community or his employment opportunities with other employers have

been or may be damaged by the city's action. *Cf. State ex rel. DeLuca,* 72 Wis.2d 672, 679. Consequently, we find no liberty interest at issue here which would entitle petitioner to procedural due process.

## PROPERTY INTEREST

*Roth, supra,* held that the property interests protected by the fourteenth amendment do not arise out of the federal constitution, but rather out of "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. 564, 577.

In the companion case to *Roth, Perry v. Sindermann,* 408 U.S. 593, 601 (1972), the court elaborated on the concept of protected property interests as follows:

"[P]roperty" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." . . . A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

The divergent holdings of the two cases, decided on the same day and both involving the rights of college professors whose contracts of employment were not renewed, help to define the contours of protected "property" interests. In *Roth,* the applicable state statutes provided for one year contracts of employment during a probationary period of up to four years; the administrative regulations implementing them provided that no reasons need be given for a nonrenewal decision; the contract of employment itself had a fixed termination date with no provision for reemployment. On those

facts, the court held that the terms of Roth's employment "secured absolutely no interest in re-employment for the next year," 408 U.S. 564, 578, and hence that Roth had no property interest entitled to protection under the due process clause. In *Sindermann,* no tenure system existed for any faculty member, and the contract of employment was similarly limited to a one year period. Sindermann offered to prove, however, that the university administration had promulgated a written policy to renew such contracts each year absent "cause" for nonrenewal, and had in effect created a *de facto* tenure system upon which he relied. The court found that those facts, if true, would support Sindermann's legitimate expectation of the continuation of his job and that the expectation amounted to a property interest of which he could not be deprived without notice and a hearing.

In this case, unlike *Roth* and *Sindermann,* the petitioner does not claim an interest in any specific job. The benefit he claims is his certification as eligible for a certain class of public employment—the benefit of continued consideration for a job to be granted on a competitive basis to one of several certified eligibles. The interest in competing for employment is a lesser interest than that of continuing a present employment. However, as *Roth* made clear, "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake." 408 U.S. 564, 570–71. (Emphasis in original.) The question we must determine under *Roth* and *Sindermann* is whether the source of the benefit—the civil service ordinance—creates a mutually explicit understanding supporting petitioner's claim of entitlement to the benefit.

The Wisconsin Supreme Court has held that in the absence of such an ordinance the power of the municipality to fire, and presumably to screen out job appli-

cants, may be exercised arbitrarily and without cause. *Richards v. Board of Education,* 58 Wis.2d 444, 206 N.W. 2d 597 (1973) ; *Adamczyk v. Caledonia,* 52 Wis.2d 270, 190 N.W.2d 137 (1971) ; *State ex rel. Wattawa v. Manitowoc Pub. Libr. Board,* 255 Wis. 492, 39 N.W.2d 359 (1949) ; *Richmond v. Lodi,* 227 Wis. 23, 277 N.W. 620 (1938). Having enacted a civil service ordinance, setting forth criteria upon which certain employment decisions will be made, the city has limited its power to act arbitrarily.

The fundamental purpose of civil service laws and rules is to establish a merit system whereby selections for appointments in certain branches of the public services may be made upon the basis of demonstrated relative fitness, without regard to political considerations . . . . Civil service laws . . . are designed . . . to prevent discrimination in appointments to public service based on any consideration other than fitness to perform its duties.
. . . .
Civil service laws substitute for the uncontrolled will of the appointing officer the results of competitive examinations. 15A Am. Jur.2d *Civil Service* sec. 1, at 5–6 (1976).

The civil service ordinance provides that the selection of city employees "shall" be made pursuant to the ordinance. The section of the ordinance applicable to first level screening decisions provides nine narrow grounds upon which the personnel director may refuse to examine a job applicant or to certify an applicant as eligible for further consideration. No other part of the ordinance provides for broader or other reasons for the city's refusal to consider an applicant for governmental employment. Thus the ordinance clearly requires that the initial decision regarding eligibility for public employment will be made on the basis of the reasons stated in the ordi-

nance and on no other basis. It thereby creates a "legitimate expectation" in the applicant that if none of the stated reasons exist, as petitioner here claims, he will be secured a right to compete for a specific job on the same basis as other applicants who have not been screened out for the stated reasons. Unlike the laws construed in *Roth,* this ordinance creates a "clearly implied promise" that the applicant will not be excluded from further consideration without a specifically stated "cause."

The city points out that the same ordinance which sets forth the criteria for selection fails to provide a right to appeal to the personnel board from an adverse decision. The city argues, in essence, that absent a specifically stated mechanism to enforce a right, the right cannot amount to a "property interest" entitled to procedural due process protections. This is in effect to argue that the government, having chosen to grant a benefit subject to certain conditions, is free to withhold the benefit and ignore the conditions at will, merely by foreclosing the injured party from a forum for review. This proposition was specifically rejected by six members of the United States Supreme Court in *Arnett v. Kennedy,* 416 U.S. 134 (1974). That case involved an analysis of federal civil service laws and regulations which provided that a nonprobationary employee could be discharged only for cause but expressly withheld the right to a trial-type hearing on the reasons for discharge prior to the termination of employment.[8] Mr. Justice Rehnquist, speaking for the plurality of three, took the position that the implied promise to discharge only for

[8] The rules provided for a hearing on appeal subsequent to discharge, after the exhaustion of other administrative procedures. The employee argued that the rules provided insufficient protection under the due process clause. Two concurring justices found the removal procedures as a whole sufficient to satisfy constitutional requirements. *See* 416 U.S. 134, 164 *et seq.*

cause was conditioned by the procedures granted by congress for enforcing it. Under that view, the discharged employee had no "property interest" in his job. Each of the other members of the court disagreed with this conclusion, holding that the civil service act created a property interest, but differing as to whether the procedures conferred for enforcing the same passed constitutional muster. Mr. Justice Powell, in a partially concurring opinion, succinctly summarized the views of the majority in criticizing the Rehnquist approach as follows:

This view misconceives the origin of the right to procedural due process. That right is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in federal employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards. 416 U.S. 134, 167.

The city also contends that *Bishop v. Wood, supra,* is determinative of this case. There a city ordinance provided that permanent employees could be discharged only for cause, and gave such employees the right to notice of the reasons for discharge, but made no provision for an independent review of the decision to fire. A federal district court judge construed the ordinance under state law to mean the employee " 'held his position at the will and pleasure of the city,' " 426 U.S. 341, 345, and thus that the ordinance created no property right in continued employment. A bare majority of the supreme court noted that the ordinance "may fairly be read" to confer a guarantee on continued employment, *id.* at 345, but held that the district court's interpretation of applicable state law was "sufficient to foreclose our independent examination of the state-law issue." *Id.* at 347. The effect of the majority holding was to emphasize its

earlier holding in *Roth* that protected property interests are found not in the federal constitution, but in local law as construed by local (including local federal) courts.

In this case, it does not appear that the provision of the ordinance governing selection of certified eligibles has previously been construed by a court in this state. The trial court based its conclusion that petitioner had a constitutional right to procedural due process on *Norlander v. Schleck,* 345 F. Supp. 595 (1972), which held broadly that "[a]ll persons . . . should have a right to or interest in fair consideration for public employment, including consideration for placement on the eligible civil service list." *Id.* at 599–600.

We agree with the city's contention that the reasoning of the *Norlander* court in arriving at its holding has been supplanted by the United States Supreme Court's mandate in *Roth* and *Bishop* that a property interest in benefits offered by government must be found in the local law, and not in generalized notions of a constitutional right to fairness. Consequently, we hold that the property interest conferred by the ordinance in certification to public employment is limited to what the city has chosen to confer—the right to be classified as eligible to compete for employment unless one or more of the stated criteria of ineligibility is present.

Once a protected property interest has been identified, the question becomes what type of process is "due." As the supreme court has frequently noted, the constitutionally required procedures necessary to insure against arbitrary interference with protected interests vary depending on the nature and importance of the interests involved and on the competing considerations of governmental efficiency, among other factors.[9] This question

---

[9] [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by govern-

was not specifically addressed by either party, though the city suggests that the trial court's holding will hamstring the operation of local government by encouraging an avalanche of requests for review of screen-out decisions.

The city has advanced no reason why it would burden the operation of city government to disclose to the petitioner the precise reason why he was determined to be ineligible to compete for city employment, and we can conceive of none. Its assertion of administrative inconvenience on that scores rings hollow.

In addition to a statement of reasons, the court ordered that petitioner be afforded a "reasonable opportunity" to refute them during a fair hearing before either the secretary of the personnel board or before the board itself. It did not order that he be provided with a full-fledged appeal of the same type as that available under the appeal provisions to present city employees, and that issue is not before us.

The due process clause requires an opportunity to be heard in a meaningful fashion depending on the context and circumstances of individual kinds of cases. In this case, we agree with the trial court that the petitioner is at least entitled to be informed of the reasons for the personnel director's refusal to certify him as eligible for city employment, and a fair opportunity to refute those reasons at a higher level of the civil service agency.

*By the Court.*—Order affirmed.

mental action. *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895 (1961).

*See also Goldberg v. Kelly,* 397 U.S. 254 (1970) ; *In re Gault,* 387 U.S. 1 (1967).