Judith A. **NORLANDER**, on behalf of herself and all others similarly situated, Plaintiffs,

v.

Clemons **SCHLECK**, individually and as Commissioner, and John S. Haider, individually and as Personnel Director, Civil Service Bureau, City of Saint Paul, Defendants.

No. 3–71 Civ. 340.

United States District Court, D. Minnesota, Third Division.

July 13, 1972.

Dolores C. Orey, Michael A. Wolff, and Mary Ann Brokaw, Legal Assistance of Ramsey County, Inc., St. Paul, Minn., for plaintiff.

Daniel A. Klas, St. Paul, Minn., City of St. Paul Corp. Counsel, by R. Scott Davies, St. Paul, Minn., appeared for defendants.

NEVILLE, District Judge.

This civil rights action brought under 42 U.S.C. § 1983 seeks a declaratory judgment and injunction against the Commissioner of the Civil Service Bu-

reau of the City of St. Paul, Minnesota and his subordinate personnel director. Plaintiff asserts that the defendants' actions in denying her placement on the Civil Service Bureau eligible list for municipal employment, based on alleged undisclosed "unsatisfactory references", violated plaintiff's XIV Amendment due process rights to be fairly considered for public employment and to the protection of her employment reputation. Jurisdiction is found under 28 U.S.C. §§ 1331, 1343(3) and (4), 2201 and 2202. Plaintiff also seeks an order that the case proceed as a class action under Rule 23(b) (2) of the Federal Rules of Civil Procedure.

Both plaintiff and defendants have moved for summary judgment. Additionally, defendants have moved for a dismissal based upon alleged lack of jurisdiction in this court and are resisting the class action concept.

The facts are not in dispute and since it appears to the court that there is no material factual issue presented the case is thus ripe for summary judgment.

In March, 1971 plaintiff applied for a clerk-typist I position with the City of St. Paul, Minnesota, that position being one of many in the classified civil service of that City. She passed the required competitive typing examination and was notified that she had been assigned position number 52 on the eligible or waiting list. In her application, plaintiff had listed her employment history and, after she was notified of her successful examination, her former employers and perhaps others were queried by means of a standard form which states in part that all replies shall be held "strictly confidential". An undetermined number of these replies were initially returned and determined to be unsatisfactory by the civil service staff. Pursuant to Section 101E of the City's charter [1] and to Ordinance No. 3250, Section 45C [2] the staff recommendation was forwarded to an advisory reference committee which agreed with the staff evaluation. Thereupon, and on June 3, 1971, plaintiff was notified in writing that her name had been removed from the eligible list "because of unsatisfactory references." Personally, and then through her counsel she requested information as to the "specific reasons for such removal and the substance of these charges." Her requests were denied and a letter from defendant Haider dated July 6, 1971 states:

" . . .

1. "The rules herein provided for shall provide:

   . . . . .

   E. For the rejection of otherwise eligible candidates who fail to comply with the reasonable requirements of the Commissioner with regard to age, qualifications, residence, sex, or physical condition, or who have been guilty of crime or of infamous or disgraceful conduct, or who have attempted any deception or fraud in connection with an application or examination, or who have been dismissed from the public service for delinquency or misconduct or who have directly or indirectly given or promised to give any money, service, or other valuable thing to any person for or on account of their examination, appointment or proposed appointment."

2. REFERENCES—

   A Character of eligibles shall be investigated and references verified in advance of certification. Such investigation shall be made with respect to the activity of the list, and the inquiry shall be kept up to date.

   B Investigation shall be conducted personally or through the medium of blanks of regulation form mailed to the references furnished by the applicants; replies of references shall be held confidential.

   C No eligible shall be removed from any eligible register for insufficient references or because of unsatisfactory references or personal qualifications, except upon recommendation of an advisory reference committee composed of three persons to be selected and appointed by the Civil Service Commissioner to serve for such terms as the said Commissioner may designate.

   D Eligibles previously discharged from the City service shall be called to the Civil Service Bureau to make explanation. In default of such appearance or in case of unsatisfactory explanation, their names shall be excluded from the eligible list.

You must realize that we cannot discuss specifics because the information submitted to us by former employers, since we indicate to former employers that this information would be kept confidential, is considered privileged information.[3]

After reviewing all the information available I feel it is appropriate that this action by my staff be sustained."

The instant suit followed.

■ This court clearly has jurisdiction if in fact a constitutional violation has occurred. Olson v. Regents of University of Minnesota, 301 F.Supp. 1356 (D.Minn.1971). The actions complained of here were those of a subdivision of state government and thus there is "state action" or action under color of State law as required by 42 U.S.C. § 1983. Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, 370 F.2d 529 (8th Cir. 1967), cited by defendants is not to the contrary and was not a case brought under the civil rights act per se and no state action was involved. In effect, the merits of plaintiff's constitutional claim and the jurisdictional issue are one.

■ The most recent expression of the United States Court of Appeals for the Eighth Circuit in cases of this kind is found in Cooley v. Board of Education of Forrest City School District, 453 F.2d 282, 285 (1972).

"The jurisprudential basis upon which the constitutional doctrine of procedural Due Process rests is the judicially-created notion that *when Government acts so as to affect substantial and protected individual interests* or to adjudicate important and protected rights, *the Due Process*

*Clause requires,* in the absence of a significant countervailing governmental interest, *that Government supply procedures which guarantee at least a modicum of fairness.* . . ."
[Emphasis added]

Since there has been no adjudication of rights in the case at bar the analysis must start with the question whether plaintiff has a "substantial and protected interest". If such an interest is found, and then if a countervailing governmental interest is also found, the two must be balanced to determine the requirements of the Due Process Clause in the circumstances. Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123, 163, 71 S.Ct. 624, 95 L.Ed. 817 (1951). (Frankfurter, J., concurring). As summarized recently by this court, "Due process is today equated with the terms of 'fair treatment' and 'reasonable action' in the premises." Olson v. Regents of University of Minnesota, 301 F.Supp. 1356 (1969).

Here, plaintiff claims a right to, or protected interest in, fair consideration for public employment buttressed by a right to be free of damage to her employment reputation as a result of the defendants' decision. Defendants dispute that claim, arguing also that even if such a right or interest exists, the city's interest in the confidentiality of the recommendations it receives outweighs the plaintiff's interest.

Neither counsel have cited, nor has the court found any reported case in which the precise issue here presented has been decided. There are facially similar cases in which courts have held that minimal fair procedures are required where entrance to a whole profession or career is controlled by a state licensing agency[4] or where one's career

3. Defendants' claim to confidentiality is based upon Civil Service Rule 45B, quoted in note 2, *supra,* which in turn is claimed to make an exception to Minn. Stat. § 15.17, Subd. 4, which provides in pertinent part as follows:
". . . *Except as otherwise expressly provided by law,* he [custodians of public records] shall permit all public records in his custody to be inspected, examined, abstracted, or copied at reasonable times and under his supervision and regulation by any person . . .."
[Emphasis added]

4. *E. g.,* Willner v. Committee on Character and Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Schware v.

would be detrimentally affected by discharge from the staff of a public institution.[5] There is another line of cases where procedural due process has been required when the public employee had an interest based upon expectancy of future employment [6] or where there was a likelihood of economic hardship from discharge in the middle of an employment year.[7] This court recently held in accord with these cases as to a tenured employee at a public university.[8]

Still a third basis for requiring due process in public employment has been found where the plaintiff's interests other than employment are affected by a decision not to hire or to fire. So where dismissal would damage employment reputation [9] or is retaliation for constitutionally protected activity [10] notice of specific charges and an opportunity to rebut have been required.

Finally, there is a fourth line of cases in areas outside of public employment where the existence or granting of a benefit to a class of persons by statute or regulation has resulted in the imposition of the minimal requirements of the Due Process Clause when those benefits are to be terminated [11] as the ceasing of welfare payments or eviction from federal housing without notice and a hearing or chance to rebut.

The first three bases are clearly inapposite in the instant case. Entry into or success in a profession or career is not involved. Plaintiff is a clerk-typist. Unlike teachers, clerical workers do not spend years preparing for an occupation where almost all prospective employers are government agencies. Unlike the practice of law, clerk-typists are not in a career which is regulated by the State and admittance to which requires a state license. Further, plaintiff here obviously has no protected interest based on expectancy of continued employment. Similarly, although plaintiff claims damage to her employment reputation, to date only persons inside the St. Paul City government know of the determination that plaintiff's references were "unsatisfactory"; nor is there any allegation, a claim that any other prospective employers will learn or have learned of the City's action. This is in contrast to the case of Drown v. Portsmouth, 435 F.2d 1182 (1st Cir. 1970), for example, where the court emphasized that unexplained failure to rehire a probationary teacher likely would damage his future employment possibilities.

It is clear from the foregoing that the emphasis on rights versus privileges which characterized earlier due process analyses has now been largely replaced by the approach outlined in the quotation from *Cooley, supra.*[12] Moreover, at least one court has held that the existence of a civil service system implies a right to, or an interest in, fair consideration for public employment that overrides the government's denial of a statement of underlying facts or reasons for denial of eligibility. Scott v. Macy, 121 U.S.App.D.C. 205, 349 F.2d 182 (1965). Plaintiff's claim in the case at bar the court believes falls under the rationale

Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1958).

5. *E. g.*, Birnbaum v. Trussel, 371 F.2d 672 (2nd Cir. 1966).

6. *E. g.*, Olson v. Regents of Univ. of Minn., cited in text, *supra*; Slochower v. Board of Higher Education of City of N.Y., 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) (tenured teacher).

7. *Cooley* cited in text *supra.*

8. Olson v. Regents of Univ. of Minn., cited *supra* n. 6

9. *E. g.*, Birnbaum v. Trussel, supra, fn. 5; Drown v. Portsmouth, 435 F.2d 1182 (1st. Cir. 1970).

10. *Drown, supra,* fn. 9; *Cooley,* cited in text *supra;* Kahn v. Secy. of Health, Education, & Welfare, 53 F.R.D. 241 (D. Mass.1971).

11. *E. g.*, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970).

12. W. W. Van Alstyne, The Demise of the Right—Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968).

of this fourth line of cases and Scott v. Macy above.

In his concurring opinion in *Scott*, Judge McGowan wrote:

"Disqualification from consideration for all federal employment is not, in my view, a status which can arbitrarily be imposed upon any citizen. I think it was arbitrary, on this record, for appellant to be disqualified for 'immoral conduct' and to be told, in response to his request for a specification, only that he had engaged in 'homosexual conduct'. . . . " *Id.* at 186

The basis for this conclusion was stated in the following words:

" . . . But the broad letter of 5 U.S.C. § 631 is far from inconsistent with a Congressional purpose that 'each candidate' who 'seeks to enter' federal employment shall have a fair opportunity to assert his 'fitness', both affirmatively and by way of opportunity to know of, and to defend against asserted personal shortcomings which are officially characterized as 'immoral conduct' within the meaning of regulations issued in implementation of the statute. . . . " [13] *Id.* at 186

The inquiry of course is whether the removal of plaintiff from the civil service list for which she was otherwise qualified because of her "unsatisfactory references" rises to constitutional heights. In recent years many things have fallen within the ambit of constitutional protection which nearly four decades ago when this court attended law school were unthought of. So under date of June 12, 1972 the United States Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, held that purchasers of a stove and

and a stereophonic phonograph under conditional sales contracts could successfully challenge on constitutional grounds state replevin statutes providing for an *ex parte* application without a hearing and notice before the seizure of the property; Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), protected small borrowers from practices of loan companies; Sniadach v. Family Finance Co., 395 U.S. 337, 89 S.Ct. 1820 23 L.Ed.2d 349 (1969), demands notice and opportunity to be heard before levy of a prejudgment garnishment under a Wisconsin statute; recently the Eighth Circuit in Ihrke v. Northern States Power Co., 459 F.2d 566 (1972), held a privately owned public utility may be exercising "state action" in ceasing to supply electricity for claimed non-payment of the charges without the giving of a prior notice and an opportunity for a hearing. See also *Goldberg* and *Escalara*, cited *supra* in fn. 11. All of these cases and many others are protecting individual's property rights. The query is properly addressed whether personal and human rights, i. e., the opportunity to be fairly considered for public employment, so as to be able to subsist and to make a living are not equally important and also do not rise to the same heights as a conditionally bought stove and stereophonic phonograph, a sum owed a small loan company on a promissory note, a garnisheed sum of money, the right to continued welfare payments etc. See *Lynch, supra,* for a discussion of the inclusion under 28 U.S.C. § 1343(3) of both property rights and personal liberties, stating "the dichotomy between personal liberties and property rights is a false one." [14]

All persons including plaintiff should have a right to or interest in fair

13. Although Judge Bazelon's opinion for the court in *Scott* focused on other issues, he concurred in Judge McGowan's opinion to form the court majority. Judge (now Chief Justice) Burger dissented from both opinions arguing that Scott had waived his procedural due process claim and disagreeing with Judge Bazelon on the merits of the issues raised in the latter's opinion.

14. The recent case of Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (June 29, 1972) is not factually apposite here and is not contrary to the above reasoning.

**600**

consideration for public employment, including consideration for placement on the eligible civil service list.

■ The question then becomes whether the claimed need of the government for confidential treatment of references outweighs plaintiff's rights. On the facts of this case, the court finds that it does not. Persons responsible for hiring and determining employment eligibility with the St. Paul City government must of course have the information necessary to make correct decisions. But that need does not and should not extend so far as to allow totally inaccurate information, if any there be, to remain in the official files unrebutted. Information reported might be clerically erroneous, subject to interpretation or might on the other hand be the result of someone's maliciousness and evidence a vendetta-like opportunity to avenge screened by confidentiality. Nor should the alleged need for confidentiality extend so far as to allow decisions to be made on illegal grounds,[15] if any such there be, to be umbrellaed under the general term "unsatisfactory references." Rather, on balance, the due process clause requires the source and substance of the references which are unsatisfactory be revealed so that they may be refuted if possible and a reasonable opportunity afforded so to do. As stated in *Drown, supra,*

> " . . . From the point of view of the teacher, such notice would give him the opportunity informally to correct a decision made on the basis of mistaken or false facts. Moreover, he might find that he had evidence that could be used to support a claim that he was not rehired for constitutionally impermissible reasons. Even if the reasons assigned were false ones, demonstrating their falsity would have probative value in a claim that the real reasons lie elsewhere. Additionally, the teacher would have the extra benefit of knowing where his performance failed to live up to expecta-

tions—a benefit that may not be constitutionally required but which is surely desirable." 435 F.2d at 1184–85

This holding is in no way intended to restrict the ability of the City of St. Paul to determine the fitness of applicants, nor does it impose any duty upon the city to hire any particular person. What is required is timely notice of the bases of decisions and a reasonable opportunity afforded for refutation.

Plaintiff's request that the case be made a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure is denied. There is no showing that there are any other persons similarly situated. Should there be others, and should the precedential value of this decision be challenged, they have the right to sue to enforce their claim. See discussion in Ihrke v. Northern States Power Co., *supra,* under part IV.

---

15. See cases cited in fn. 10, *supra.*