**Peter GRIFFIN, Plaintiff,**

v.

**Frederick S. CAREY, Barbara Robbins, Louis Nigrello, in their official capacity as members of and constituting the Municipal Civil Service Commission, City of Yonkers, and the City of Yonkers, Defendants.**

**No. 81 Civ. 5941 (ADS).**

United States District Court, S. D. New York.

Aug. 23, 1982.

Chase & Greenberg by Edward T. Chase, New York City, for plaintiff.

Michael R. Edelman, Corp. Counsel by Robert W. Villani, First Deputy Corp. Counsel, Yonkers, for defendants.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge.

Plaintiff Peter Griffin has moved for summary judgment on his claim that defendants violated his rights by removing him from the list from which the City of Yonkers appoints its firefighters. He seeks an order requiring his restoration to the firefighter-eligible list, his immediate hiring and swearing-in as a firefighter, compensatory damages, and attorneys' fees. Defend-

ants argue that plaintiff fails to state a claim on which relief may be granted, and alternatively that they are entitled to summary judgment. At oral argument on the motion, defendants formally moved for summary judgment.

In 1972 plaintiff was convicted of disorderly conduct in state court. Plaintiff was employed from 1976 to 1977 as a letter carrier by the United States Postal Service. On December 15, 1977 plaintiff pleaded guilty to federal charges involving the cashing of checks stolen from the mail, and on January 26, 1978 plaintiff was sentenced in this Court as a young adult offender under 18 U.S.C. § 4216. Plaintiff was sentenced to probation, but required to serve three months in prison as a special condition of probation. He was also dismissed from the Postal Service.

On April 26, 1978 plaintiff applied to take the examination for firefighter in the office of the Municipal Civil Commission of the City of Yonkers. Question "7" of that application asked:

> Except for minor traffic violations and adjudications as youthful offender, wayward minor or juvenile delinquent, have you ever been convicted of an offense against the law, forfeited collateral or are you now under charges for any offense against the law?

Griffin answered "No". Question "10" of the application asked: "Were you ever dismissed from any employment?" Griffin answered "No".

Plaintiff took and passed Firefighter Examination No. 68–627, given on May 20, 1978. His name was placed on the eligible list established on January 30, 1979, along with the names of all other persons who passed the examination. An investigation was thereafter conducted by the Yonkers Police Department with respect to all individuals whose names appeared on the firefighter-eligible list. It revealed plaintiff's 1977 arrest for mail fraud, as well as his 1972 disorderly conduct arrest. Griffin was invited to appear in person at a meeting before the Municipal Civil Service Commission to discuss these matters.

On March 6, 1979, Judge Stewart set aside plaintiff's young-adult-offender conviction, pursuant to 18 U.S.C. § 5021(b). Soon thereafter, at a meeting before the Municipal Civil Service Commission on March 19, 1979, Griffin revealed and discussed his federal conviction. He also revealed his 1972 disorderly conduct conviction. Griffin claims these revelations were willingly and openly made. Defendants concede the revelations were made, but claim they were made grudgingly. *Compare* affidavit of Peter Griffin ¶ 2 *with* affidavit of Frederick S. Carey ¶¶ 9–11. The Commission wrote as follows to Griffin on March 21, 1979:

> As the result of your appearance at the Commission meeting of March 19 regarding your police record, your name has been eliminated from the eligible list for Firefighter No. 68–627.

Plaintiff's Motion for Summary Judgment, Ex. C. (hereinafter cited as "P.X."). On April 2, 1979, the Commission received an opinion letter from the Yonkers Department of Law which, without citing any authorities, stated: "Griffin should not be denied his right to be certified for an appointment to the position of firefighter based only on his 'Young Adult Offender' conviction." P.X. "D." The Commission took no recorded action in response to this opinion.

On October 16, 1979 the Commission allowed plaintiff and his attorney to appear and appeal Griffin's removal from the list. The appeal was denied by letter dated November 7, 1979.

Plaintiff sued under C.P.L.R., art. 78 in Supreme Court, Westchester County, for an order annulling his disqualification. On March 13, 1980, Justice Leonard Rubenfeld entered the following order conditionally restoring plaintiff to his original place on the eligibility list:

> [T]he petition is granted and petitioner is restored to his original place on the eligibility list but without prejudice to further proceedings by the respondents to declare petitioner ineligible pursuant to Section 50 (subdiv. 4) of the [Civil Service] Law.

It is clear from the papers submitted that petitioner was removed from the eligible list without ever having been given adequate written statement of the many reasons now given for his disqualification and without being afforded an opportunity to explain and submit facts in opposition to such disqualification, as required by the foregoing provisions of the [Civil Service] Law (cf. *Prosad [Prasad] v. Merges,* 65 A.D.2d 663 [409 N.Y.S.2d 815]; *Matter of Cassidy v. New York State Department of Correctional Services,* 63 A.D.2d 1089 [406 N.Y.S.2d 377]; *Matter of Cavarelli [Canarelli] v. New York State Department of Civil Service,* 44 A.D.2d 645 [353 N.Y.S.2d 275]).

Thereafter the Commission ordered plaintiff's name reinstated to the firefighter-eligible list. But on August 5, 1980 the Commission informed plaintiff that it had reviewed his application and had found him ineligible for the following reasons:

> The position of Firefighter is viewed by the Civil Service Commission and the citizens of the City of Yonkers as a position of trust, and, as such, the city must endeavor to appoint individuals whose background and character reflect trustworthiness.
>
> Your background file has indicated to the Yonkers Civil Service Commission that you are unsuitable for the position for the following reasons:
>
> 1. On your application you falsely misstated the answers to two questions:
>
> A. In Item # 7 of your application, you answered "No" to the question, have you ever been convicted of an offense against the law. You thus failed to disclose that in 1972 you were convicted of disorderly conduct which is an offense against the law.
>
> B. In Item # 10 on your application, you answered "No" to the question, were you ever dismissed from any employment. You were, however, dismissed from your employment as a letter carrier with the United States Post Office.
>
> 2. In an interview with the Yonkers Civil Service Commission, you voluntarily re-

vealed that in 1977, while employed by the United States Post Office, you stole several checks worth approximately four thousand dollars from the mail and did endorse and cash such checks in concert with others. This information was later verified in affidavits signed by you and used in court.

P.X. "J."

The Commission lacks the power to select individuals for appointment as firefighters; that power is vested in the City of Yonkers, which is free to choose one applicant from every three on the list. *See* N.Y. Civil Service Law § 61 (McKinney 1981). But by removing plaintiff from the eligible list, the Commission deprived him of the opportunity to be considered by the City for appointment. Placement on the list does not guarantee appointment, but only persons on the Commission-certified list may be appointed.

Plaintiff and his attorney met with the Commission again on October 20, 1980 to discuss his removal from the eligible list. His attorney again made a full presentation of the relevant circumstances. In a letter dated February 3, 1981, the Commission reaffirmed its decision of August 5, 1980 to disqualify plaintiff. On October 23, 1981, twelve persons were appointed from the firefighter-eligible list to the Yonkers Fire Department. Had plaintiff been left on the eligible list by the Commission, his name would have been among the top twelve on the eligible list from which the appointments of October 23, 1981 were made.

## I.

Plaintiff's complaint is based upon 42 U.S.C. § 1983. In the single paragraph that he denotes "Causes of Action" he asserts that he was denied his "federal and state constitutional rights to due process of law ...." Complaint ¶ 35. In the same paragraph he also asserts a violation of his "federal statutory rights under 18 U.S.C. 4216 and 5021(b)," as well as "his rights under New York State Correction Law, sections 750-755."

### A. *Due Process Claims*

Plaintiff's argument on his due process claim is set out in a footnote of his brief. He states:

> The defendants have also violated Mr. Griffin's constitutional rights to "liberty" and "property." *Bishop v. Wood,* 426 U.S. 341 [96 S.Ct. 2074, 48 L.Ed.2d 684] (1976); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548]; *Norlander v. Schleck,* 345 F.Supp. 595 (D.C.Minn.1972). Under New York Civil Service Law and Regulations Mr. Griffin had a fully ripened property interest in his earned position on the eligibility list which the defendants violated by illegally removing him. Section 3.6 and 4.1(a) of the Rules and Regulations of the Department of Civil Service; McKinney's Consolidated Laws of New York, Annotated, 1973 Ed. pp. 660–661.

Plaintiff's Brief at 10 n.*.

▉ The New York courts have made clear that a person has no property right to appointment as a firefighter, even if he appears on the eligible list. Section 61 of the Civil Service Law allows the appointing authority to pass over any particular individual without holding a hearing or giving any reason. *Cassidy v. Municipal Civil Service Commission,* 37 N.Y.2d 526, 375 N.Y. S.2d 300, 337 N.E.2d 752 (1975); *Kaminsky v. Leary,* 33 A.D.2d 552, 304 N.Y.S.2d 650 (1st Dep't 1969), *aff'd,* 28 N.Y.2d 959, 323 N.Y.S.2d 700, 272 N.E.2d 75 (1971). Plaintiff argues that he nevertheless has a property interest in being left on the eligible list. Although a place on the eligible list does not entitle one to an appointment, it does afford an opportunity to be considered. Rules and Regulations of the Department of Civil Service § 3.6 (McKinney 1973); *see Norlander v. Schleck,* 345 F.Supp. 595 (D.Minn.1972) (due process violation found concerning nonplacement on an eligible list). On the other hand, Civil Service Law § 50.4 specifically authorizes municipal commissions to deny a place on an eligible list to any applicant who has been guilty of a crime, has been dismissed from public

service for misconduct, or has intentionally made a false statement of material fact on his application. Inasmuch as plaintiff fits any of these disqualifying categories as a matter of undisputed fact, it appears plaintiff has no entitlement to a place on the eligible list under state law. "Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ...." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Civil Service Law § 50.4 also specifically provides: "No person shall be disqualified [as an eligible] pursuant to this subdivision unless he has been given a written statement of the reasons therefor and afforded an opportunity to make an explanation and to submit facts in opposition to such disqualification." The New York Supreme Court ordered plaintiff's conditional reinstatement because of the Commission's failure to provide the written statement required by § 50.4. By its subsequent letter of August 5, 1980 and by the opportunities it afforded plaintiff and his attorney to argue Griffin's case, the Commission plainly satisfied all the arguably necessary requirements of both the due process clause and § 50.4. Plaintiff's assertion that the August 5 letter was a "post hoc explanation" is meaningless. Any subsequent explanation by an agency or court of its position is "post hoc," and nothing in law or logic can be said against permitting a decision maker to reach the same conclusion on a remand that it had originally reached, particularly where the remand called for a statement of reasons for the conclusion originally reached.

Finally, if plaintiff had serious doubts as to the adequacy of the process he was afforded under state law, he could easily have sought review under CPLR, article 78, as he had earlier done. But he did not return to the state courts to challenge the procedural steps taken on remand by the Commission.

### B. *Federal Statutory Claim*

Plaintiff argues that defendants violated his rights under the "set-aside" provision of 18 U.S.C. § 5021(b). A violation of federal statutory rights would, as plaintiff contends, entitle him to sue under 42 U.S.C. § 1983. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Plaintiff's suggestion, however, that § 5021(b) implicitly prohibits at least any public employer from relying upon a set-aside conviction in considering an applicant's fitness is untenable. Section 5021(b) is designed to assist youthful offenders by making it less likely that convictions will come to employers' attention, not by barring employers from considering such information once they learn of it. The statute recognizes that employers "will refuse to 'take a chance on an ex-convict," *Doe v. Webster,* 606 F.2d 1226 (D.C.Cir.1979), but it does not prohibit such behavior. Thus, even if the Commission did rely on plaintiff's conviction in deciding to remove him from the eligibility list, it did not violate plaintiff's federal rights. While nonhiring due solely to an applicant's set-aside conviction may well be inconsistent with the ultimate aim of § 5021(b), *see Doe v. Webster, supra,* 606 F.2d at 1234–38, the provision nevertheless creates no rights respecting potential employers.

Plaintiff's reliance upon *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) is misplaced. Both those cases involved an employer's alleged interference with an employee's right, in *Mt. Healthy* the right to free speech granted by the first amendment, and in *McDonnell Douglas* the right not to be discriminated against because of race provided by Title VII of the Civil Rights Act of 1964. The statute involved here directly grants no rights at all; it merely empowers the courts to make certain modifications of criminal convictions. By removing plaintiff from the firefighter-eligible list the Commission in no way interfered with the federal court's power to discharge plaintiff unconditionally from probation, thereby automatically setting aside the conviction, and to issue a certificate to

that effect, as authorized by 18 U.S.C. § 5021(b).

It should be noted that this case does not present the issue of whether an automatic set-aside under § 5021(b) requires federal law-enforcement agencies to expunge their records of any reference to the set-aside conviction. Decisions in this Court and at least two Circuit Courts have held that § 5021(b) permits but does not require such expunction. *United States v. Doe,* 556 F.2d 391 (6th Cir. 1977); *United States v. McMains,* 540 F.2d 387 (8th Cir. 1976); *United States v. Hall,* 452 F.Supp. 1008 (S.D.N.Y.1977). The District of Columbia Circuit has held, on the other hand, that a § 5021(b) set-aside requires expunction of a conviction from generally available criminal records. *Doe v. Webster,* 606 F.2d 1226 (D.C.Cir.1979).

In this case, Judge Stewart never ordered expunction of Griffin's conviction. Had expunction been ordered, moreover, it would not have affected the Commission's knowledge of plaintiff's criminal record. The Commission learned of plaintiff's set-aside conviction from plaintiff himself at the March 19, 1979 meeting. Prior to that meeting it knew only of plaintiff's 1977 arrest for mail fraud, which arrest culminated in plaintiff's federal conviction. The Commission could properly have learned of this arrest even under the standards of *Doe v. Webster, supra,* 606 F.2d at 1230–31, which held that a § 5021(b) set-aside never requires expunction from the record of an arrest.

In any event, the record reflects that the Commission did not rely upon plaintiff's set-aside federal conviction. The August 5, 1980 statement of reasons issued by the Commission rests on considerations that are related to the conviction, but not on the conviction itself. Thus, the Commission relied on plaintiff's failure to reveal his 1972 disorderly conduct conviction on his application; on the fact that he indicated in his application that he had never been terminated from employment; and on the conduct (theft from employer and forgery) that led to the conviction.

Plaintiff attempts to explain one of the knowing lies in his application by stating that his attorney in the federal prosecution, Alvin Geller, Esq., advised him to answer "No" to the question whether he had previously been dismissed from employment, because a "Yes" answer could have led to the discovery that he had been convicted, which would have undermined the purposes of the Youth Corrections Act. The plaintiff's affidavit does not expressly state that he spoke to Mr. Geller *before* completing his application. Assuming, however, that the consultation occurred before the application date (April 26, 1978), and that Mr. Geller actually advised plaintiff he could hide the fact of his termination, the advice was erroneous. At the time he applied for the firefighter examination, Griffin's federal conviction had not been "set aside"; it was set aside, in fact, almost a year later, on March 6, 1979, on a probation record that Judge Stewart decided in his discretion warranted the relief he awarded, and incidentally without the knowledge that plaintiff had lied to the Commission while on probation. Given this undisputed chronology, plaintiff had no basis for failing to reveal the termination of his employment.

Plaintiff relies on the District of Columbia Circuit's conclusion that a set-aside under § 5021(b) allows "the ex-offender whose conviction is or has been set aside [to] legally reply in the negative to any and all questions concerning his former conviction." *Doe v. Webster, supra,* 606 F.2d at 1244. This conclusion plainly relates only to responses by a person whose conviction has already been set-aside. It does not support the propriety of lies designed to hide the existence of a criminal conviction that has yet to be set-aside. Moreover, it is doubtful that the District of Columbia Circuit in *Webster* intended to authorize lies on collateral matters as a means of concealing already set-aside convictions. Such an expansive interpretation of § 5021(b) would create moral and practical difficulties which Congress did not contemplate. The statute provides for the setting-aside of convic-

**456**

tions; it does not permit the withholding or rewriting of historical facts, however closely related to the set-aside conviction. *See Fite v. Retail Credit Co.*, 386 F.Supp. 1045 (D.Mont.1975) (credit company cannot be enjoined from reporting fact of set-aside conviction), *aff'd*, 537 F.2d 384 (9th Cir. 1976). That plaintiff's attorney may have provided plaintiff with erroneous advice was a proper, ameliorative fact to put before the Commission, but it did not confer upon him a power to lie with impunity. The attorney's advice could not increase plaintiff's federal rights, nor decrease the Commission's authority to disqualify him.

### C.  *State Law Claims*

■ Plaintiff contends that the Commission could not rely upon his "No" answer to the question whether he had ever been dismissed from employment, because the question was improper under state law. Plaintiff argues that state law permits inquiry of job applicants concerning dismissals from employment for incompetency, misconduct, or habitually poor performance, but that the Commission's question was overbroad in that it called for information concerning any type of termination. The question seems perfectly proper, given the breath of inquiry implicitly permitted by the broad grounds of dismissal on which the Commission is authorized to rely. But even if it were overbroad, plaintiff has no basis for complaining, since his dismissal was for misconduct, an authorized ground for inquiry.

■ Similarly, plaintiff claims that Civil Service Law § 50.4(d) limits the Commission to inquiring whether applicants have been guilty of "crimes," and that the question asking about convictions for "offenses" was therefore unlawful. These circumstances, plaintiff contends, entitled him to answer that he had never been convicted of an "offense," although he had been convicted of disorderly conduct in 1972. Plaintiff adds, moreover, that this false answer was also made on advice of counsel—Peter P. Rosato, Esq.—and in any event relates to conduct having no bearing upon his performance as a firefighter. That the Com-

mission may be limited to disqualifying only persons convicted of "crimes," however, does not mean it lacks power to collect information on "offenses." Misconduct of many sorts may be relevant to the Commission's authority to disqualify on grounds other than the conviction of a crime. Plaintiff's claim that Mr. Rosato advised him to answer "No" to a question concerning "offenses" is inconsistent with Rosato's version; the attorney admits only to advising plaintiff to answer "No" to whether he had been convicted "of a crime." *See* P.X. "O," and Rosato letter of October 21, 1980. If his attorney in fact advised plaintiff to lie as to whether he had been convicted of an "offense," then once again, although plaintiff's rights against the Commission could not thereby be increased, he might have been damaged by poor legal advice. The Commission was legally authorized to rely upon this lie—having nothing to do with plaintiff's federal conviction—to declare him ineligible.

■ In his complaint, plaintiff alleges violations of his rights under N.Y. Correction Law §§ 750–55 (McKinney 1981). Unlike 18 U.S.C. § 5021(b), § 752 of the New York law specifically prohibits "unfair discrimination" against those convicted of criminal offenses. The statute, which requires balancing a number of conflicting factors to determine if an instance of discrimination is "unfair", does not appear to have been clarified by the relatively small number of reported state-court decisions involving its provisions. The statute specifies, moreover, that where public agencies are involved § 755 shall be enforced through a proceeding under C.P.L.R., article 78. The statute creates further uncertainty in that it does not specify what remedies are available for its breach, and plaintiff has not provided any help in construing the statute, since his brief contains no discussion or argument on its meaning or scope. Under these circumstances, the state-law claim for unfair discrimination could be dismissed for want of jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Addressing the merits of this claim, however, on the assumption that plaintiff could not now obtain

state-court review, the defendants have not unfairly discriminated against Griffin, in light of their conclusion that he lied intentionally and engaged in conduct in his prior employment that rendered him unfit to be a fireman.

## II.

For the foregoing reasons, defendants are granted summary judgment on all plaintiff's claims. Fed.R.Civ.P. 56(b). Defendants have prevailed on the merits, but are not entitled to attorneys' fees as authorized by 42 U.S.C. § 1988. Plaintiff's case has little or no merit, but he was led to prosecute it in no small part by the Commission's initial failure properly to explain its decision. The Commission in fact violated plaintiff's rights under state law by initially failing to state clearly the reasons for declaring him ineligible. Given that equitable consideration, and the fact that plaintiff appears to have received questionable legal advice at various stages in his employment effort, defendants will not be awarded attorneys' fees. *See Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The Clerk will enter judgment dismissing the complaint with costs.

SO ORDERED.