**Bruce N. RANDALL, Plaintiff,**

v.

**The CITY OF NIAGARA FALLS, Defendant.**

**No. CIV–85–1318E.**

United States District Court, W.D. New York.

Dec. 21, 1988.

**55**

Paul H. Reid, Jr., Niagara Falls, N.Y., for plaintiff.

Douglas J. Crowley and Paul Crapsi, office of Corp. Counsel, Niagara Falls, N.Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

The plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for the defendant's alleged failure to accord him fair consideration for employment in view of his high placement on a Civil Service List. The defendant claims that the plaintiff has been accorded all rights he may have had with respect to such consideration inasmuch as he had previously worked in a similar position with the defendant and that, therefore, there had been no need to grant him an interview. A four-day nonjury trial was held, after which the parties filed their

respectively proposed Findings of Fact and Conclusions of Law. Upon the basis of the testimony and other evidence presented, this Court makes the following findings and conclusions.[1]

The plaintiff had been employed by the defendant ("the City") as an Assistant Operator at its Waste Water Treatment plant from November 1976 to December 15, 1979. Randall Testimony, Trial Transcript ("Tr.") at 1–9; Plaintiff's Exhibit 14. In December 1979 charges had been filed against him and a Civil Service proceeding had been conducted. The final disposition of those charges had been a six-month suspension without pay. In June 1980 he had been reinstated and appointed to the position of Assistant Operator at the City's Water Pumping Plant. Plaintiff's Exhibits 2 & 4. After six months at the Water Pumping Plant, he had resigned, citing a number of reasons among which were the overall work environment, his supervisor's physical characteristics and habits and his own plans to pursue his career as a fine artist and musician. Defendant's Exhibit 1.

In December 1984 the City had combined the two positions which he had held at both plants and a Civil Service Examination had been held for such combined position—*viz.*, Assistant Operator–Waste Plant/Sewage Plant. Tr. at 1–59; Plaintiff's Exhibits 10–11. The plaintiff had taken the examination and had placed fifth on the Civil Service Eligible list. Plaintiff's Exhibit 11. The City then had canvassed people for the position and a list of thirteen names had been submitted to Robert E. Game, Di-

---

1. At the close of the evidence there was still a question whether Defendant's Exhibit 2 was to be received into evidence. It had been tentatively received pending the plaintiff's examination of various log books which were summarized in and made part of the exhibit. The exhibit is a transcription by Robert E. Game (the defendant's Director of Utilities) of the plaintiff's performance and an adding to that of his summarization of different events emanating from the logbooks. Trial Transcript at 2–36. The plaintiff's attorney had been allowed to review the logs in order to satisfy himself that the events transcribed in the summarization truly came from the logbooks. The plaintiff had a

general relevancy objection to such exhibit but this Court would only entertain an objection as it related to the correctness of the summarization of the log books. After the plaintiff's attorney had been given an opportunity to examine the logbooks, he still maintained his objection to the relevancy of Exhibit 2 but was not very definitive whether Game's transcription truthfully reflected the events noted in the books. Inasmuch as Game had testified that his summaries did emanate from the log books and that the plaintiff's attorney's primary objection was to relevancy, this Court finds that Defendant's Exhibit 2 is relevant and is therefore received in evidence.

rector of Utilities for the City. Game Testimony, Tr. at 2–62 to 2–64. Game thereupon had submitted the list to Douglas Crocker, Chief Operator–Waste Water Treatment Plant, and had instructed him to set up a committee to interview potential candidates. Although there was no City-wide policy of interviewing candidates whose names appeared on an eligible list, Game, as head of the Utilities Department, had instituted a somewhat *ad hoc* policy of interviewing candidates. Lynne S. McDougall[2] Testimony, Tr. at 1–205; Game Testimony, Tr. at 2–41. It had been his feeling that supervisory officials, who had to work with people at the entry-level positions, should have some involvement in recommending individuals for the jobs. Game Testimony, Tr. at 2–42; Crocker Testimony, Tr. at 2–136. Crocker thereupon had formed an interviewing committee which consisted of himself, Russell Fratello (a Shift Supervisor at the Waste Water Treatment plant), and Joseph Agnello (an Operator at the Water Pumping Plant). Crocker Testimony, Tr. at 2–109. This was not a rigidly constituted committee inasmuch as one of the interviews was conducted by Crocker and another Shift Supervisor at the Waste Water Treatment plant. *Id.* at 2–136. It is important to note that this committee had been instituted in order to implement somehow Game's belief. Of the thirteen people on the list given to Crocker by Game, eleven of them were interviewed; the plaintiff and one other individual on the list were not. *Id.* at 2–111. Eleven people had been hired, including the one other individual who, besides the plaintiff, had not been interviewed. The plaintiff was one of the two from the list of thirteen who were not hired by the City. *Ibid.;* Game Testimony, Tr. 2–46, 2–47; Plaintiff's Exhibit 16.

The decision not to interview the plaintiff and the one other person on the list was strictly Crocker's and was based on his own familiarity with and the past work performance of each. Crocker Testimony, Tr. at 2–111, 2–149 & 2–159. Fratello, one of the members of the Committee, had also been very familiar with the plaintiff inasmuch as he, like Crocker, had worked with the plaintiff at the Waste Water Treatment plant. Fratello Testimony, Tr. at 2–184. Agnello, the third member of the committee, had not been familiar with Randall's past work performance at the Waste Water Treatment plant. Agnello Deposition, pp. 9–10 (received in Evidence, Tr. at 1–200, 1–211). The extent of any discussion among the members of the committee about the decision not to recommend the plaintiff was not recalled by either Crocker or Fratello. Crocker gave his recommendations to Game and Game then submitted those same names to the City's City Manager, who made the actual hiring decisions. Game Testimony, Tr. 2–68, 2–73.

There is no factual question regarding the plaintiff's past work experience with the City. His excessive tardiness and other violations of various work rules had been well-documented in the Civil Service Hearing Officer's Recommendation. *See* Plaintiff's Exhibit 14. Crocker and Game, both of whom had been responsible for the making of the recommendations to the City Manager, had been quite familiar with the plaintiff. On numerous occasions the plaintiff had failed to relieve Crocker timely at the start of the plaintiff's designated shift. Crocker Testimony, Tr. at 12–105. Game had been an Operator at the Waste Water Treatment plant during the period when plaintiff had been employed there. Game Testimony, Tr. at 2–24. Towards the end of the plaintiff's employment at the Waste Water Treatment plant, Game had been promoted to a position in which he was in charge of the Operators at said plant. As such, Game had been in a supervisory position over the plaintiff and knew his work performance well. Game had compiled a "black book" with respect to the plaintiff which summarized the plaintiff's very poor work performance. *See* Defendant's Exhibit 2; footnote 1, *supra.* Said book had been prepared from various log books which had been compiled by the Shift Operators who had been the plaintiff's and other Assistant Operators' immediate su-

---

**2.** The City's Director of Personnel and Secretary    to the Civil Service Commission.

pervisors. The plaintiff's poor work performance is therefore evident from the record and had been known to the persons making the hiring recommendations.

The plaintiff alleges that he had been denied his federally protected right to due process of law when he had been denied fair consideration for employment with the City. An individual's right to due process under the Fourteenth Amendment to the United States Constitution is implicated only when some property interest is at stake. In order to have a property interest in a benefit, a person must have a legitimate claim of entitlement to it. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Kaelin v. Long Island R. Co.,* 504 F.Supp. 656 (E.D. N.Y.1980). Property interests are not created by the Constitution; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. In New York a person has no right to an appointment even if his name appears among the three highest on an eligible list. The appointing authority has the authority to pass over any individual without having to hold a hearing or to give a reason. *See* section 61 of New York's Civil Service Law; *Cassidy v. Mun. Civ. Serv. Com. of New Rochelle,* 37 N.Y.2d 526, 375 N.Y.S.2d 300, 337 N.E.2d 752 (1975); *Griffin v. Carey,* 547 F.Supp. 449 (S.D.N.Y.1982). Placement on an eligible list, although not entitling one to appointment, does at least afford one an opportunity to be considered— *Griffin v. Carey, supra,* at 453; *Cassidy v. Mun. Civ. Serv. Com. of New Rochelle, supra,* 375 N.Y.S.2d at 303, 337 N.E.2d at 754; *See* Rules and Regulations of the Department of Civil Service, § 36; *see also Norlander v. Schleck,* 345 F.Supp. 595, 599–600 (D.Minn.1972) (person should have a right or interest in fair consideration for public employment).

The plaintiff claims that he had been denied his right to fair consideration because the City had not afforded him an interview despite his high placement on the eligible list. There was no city-wide policy of conducting interviews to fill new jobs; there was only Games's departmental belief that supervisors should have some say in the decision-making process and that interviews for entry level employees were a way to implement such belief. Failure to be granted an interview is not in and of itself a denial of fair consideration. The other individual who had not been granted an interview had been hired for one of the positions. The plaintiff had not been granted an interview only because the person in charge of the interviewing process and the one actually responsible for the interviewing committee's ultimate decisions —Crocker—had been very familiar with the plaintiff and his work record with the City. The interviews conducted were short in duration and involved nothing more than an explaining of the position to the interviewee and a giving to the members of the Committee a chance to meet the candidates. Crocker Testimony, Tr. at 2–110. Such an interview was certainly not necessary for an evaluation of the plaintiff inasmuch as he had previously held the position of Assistant Operator and as Crocker and Fratello knew him well.

A public authority enjoys a great deal of discretion in making appointments from an eligible list and a decision to appoint *vel non* need only have some rational basis. *See Serva v. Office of Ct. Admin., State of N.Y.,* 92 A.D.2d 587, 459 N.Y.S.2d 475 (2d Dept.1983); *Schmitt v. Kiley,* 124 A.D.2d 661, 507 N.Y.S.2d 907 (2d Dept.1986) (memorandum opinion), *leave to appeal denied,* 69 N.Y.2d 612, 517 N.Y.S.2d 1027, 511 N.E. 2d 86 (1987). Prior conduct and past performance are relevant considerations and a prior poor attendance record or an earlier poor work record may form a rational basis for a decision not to appoint one who is eligible. *Schmitt v. Kiley, supra,* 507 N.Y. S.2d at 908; *Larkin v. Sardino,* 79 A.D.2d 1096, 435 N.Y.S.2d 843 (4th Dept.1981) (memorandum opinion). Crocker's decision not to interview the plaintiff and Game's decision not to recommend him had been based on their specific knowledges of the

plaintiff's past work performance and, as such, were legitimate and rational. Fair consideration can mean no more than that the decision whether or not to appoint an eligible was neither arbitrary nor capricious and was rationally based on some relevant considerations. It was not disputed that the plaintiff had had a poor attendance record, that he had been found to have violated various rules and regulations of the Waste Water Treatment plant and that both Crocker and Game were familiar with such. Game, for a portion of the plaintiff's time at the plant, had been the man in charge of those employed there. Inasmuch as the decision not to interview the plaintiff had been rationally based on Crocker's familiarity with him and that the final decision not to recommend the plaintiff for appointment was rationally based on his prior work record, this Court finds that the plaintiff has been accorded all rights he possessed to a fair consideration for appointment to the position of Assistant Operator and therefore that his Fourteenth Amendment rights to due process have not been violated by the City.

Accordingly, it is hereby ORDERED that judgment shall be entered in favor of the defendant and that the Complaint is dismissed with prejudice.