OPINION OF THE COURT
Thomas F. McGowan, J.
These consolidated petitions under CPLR article 78 arise out of the short-lived conflict between the Federal Age Discrimination in Employment Act (ADEA) (29 USC § 623 [a.] [1]) and New York’s Civil Service Law § 58, regarding the hiring of law enforcement officers. Until January 1, 1987, the ADEA prohibited age discrimination against applicants between the ages of 40 and 70 who sought to be police officers. At the same time, section 58 of the Civil Service Law barred applicants who had reached their 29th birthday from commencing employment with any police force in the State, with certain geographic and age exceptions not relevant to the petitions herein.
In Hahn v City of Buffalo (770 F2d 12 [1985]) the Second Circuit Court of Appeals upheld Chief Judge Curtin’s earlier ruling (596 F Supp 939) that prohibited enforcement of section 58 against those police applicants ages 40 to 70. The case did not decide the question whether the remainder of section 58 prohibiting the hiring of applicants between ages 29 and 39 was valid and severable from that portion in violation of the ADEA. In Doyle v Suffolk County (786 F2d 523) the Second Circuit answered this question in the affirmative. Petitioners herein are all applicants for the Buffalo City Police and Erie County Sheriff who were between the ages of 29 and 39 when their names were removed from eligibility lists after the Doyle decision. They urge this court to conclude that section 58 was not severable under New York law and that the enforcement of the remainder of the statute was illegal.
Effective January 1, 1987, Congress amended the ADEA to allow age discrimination in the hiring of police officers. Petitioners and respondents disagree on the consequences of this change upon the Hahn and Doyle decisions (supra), and upon the various petitions in the instant case. However, as of November 1988 the different parties have entered into stipulations of fact and of standing regarding all but two petitioners, which now allow this court to focus on the crucial questions of law.
The stipulation of standing endorsed by the City of Buffalo includes the names of four petitioners who filed complaints *1056 with the State Division of Human Rights (SDHR) before starting their article 78 actions. The city argues that the petitions of these four — Allen, Crumpley, Woodman and Yeates — must be dismissed for lack of jurisdiction in accordance with Executive Law, article 15 (Human Rights Law), § 297 (9). Petitioners argue that since their claims do not invoke the New York Human Rights Law, they should not be barred. Section 297 (9) states, in pertinent part: "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.”
These four complaints have not been dismissed for administrative convenience. Petitioners may not wish to claim in this court that they are "aggrieved by an unlawful discriminatory practice” according to the above statute. Yet they have already claimed as much before the State Division of Human Rights. The petitioners’ outstanding and preceding complaints with the State Division of Human Rights have denied this court jurisdiction to hear their petitions, which must be dismissed. (Emil v Dewey, 49 NY2d 968; Spoon v American Agriculturalist, 103 AD2d 929.)
Petitioners Patterson (city) and Leone, Martin and Roussie (county) are stipulated to have standing for appointment after January 1, 1987. Since the amendment to the ADEA became effective on that date, the only possible claim these petitioners can assert is that section 58 violated their State constitutional rights to equal protection. Briefly, section 58, before the Hahn decision (supra), and after the amendment of ADEA, is beyond attack on constitutional grounds. The Court of Appeals in Matter of Figueroa v Bronstein (38 NY2d 533) held that the law need only have a rational relation to a valid State interest, that of promoting young and healthy police forces, and found that the law in fact did so (see also, Knapp v Monroe County Civ. Serv. Commn., 77 AD2d 817). (No court has yet addressed the constitutionality under the New York Constitution of section 58 after Hahn but before 1987, when the ADEA may have removed some if not all of the statute’s *1057 rational relation to the State’s interest in young and healthy police forces.)
Respondents claim the petitions are not moot due to the amendment of the ADEA. They urge this court not to redress wrongs in the past that cannot possibly recur. This argument would be persuasive if the remaining petitioners who were eligible for hire in 1986 when their names were removed had not suffered any injury to legal or property rights. There is authority that those whose names are on a civil service eligibility list for promotion have a property right to be fairly considered, i.e., to remain on the list (Drogan v Ward, 675 F Supp 832; Griffin v Carey, 547 F Supp 449). As the court in Drogan pointed out, section 3.6 of the Rules and Regulations of the Department of Civil Service (4 NYCRR) appears to create a right to be considered in favor of those who get passing grades. Further, the Court of Appeals has recently stated: "where a person has not been considered fairly for an appointment by a public employer, the remedy that generally will make the individual whole, in addition to whatever money damages are warranted, is that the individual be fairly considered for the appointment” (Matter of State Div. of Human Rights v County of Onondaga Sheriff's Dept., 71 NY2d 623, 634).
However unlikely to recur the circumstances may be that harmed the petitioners, the court concludes that they have suffered a deprivation of their rights and should be permitted to seek redress in this court.
The remaining petitioners stipulated to have standing — Belter (city) and Catanzaro, Hamm, Lawson, Motyka and Paz (county) assert that until the effective date of the amendment to the ADEA on January 1, 1987, section 58 was so deformed by the Hahn decision (770 F2d 12, supra) that under New York law the remaining portion of the statute should not have been enforced against them.
It appears well settled that the severability of a State statute is a question of State law (Skinner v Oklahoma, 316 US 535; Welsh v United States, 398 US 333; Billington v Hayduk, 565 F2d 824). Judge Cardozo has described the longstanding rule in New York State: "The principle of division is not a principle of form. It is a principle of function. The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected alto *1058 gether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots.” (People ex rel. Alpha Portland Cement Co. v Knapp, 230 NY 48, 60; see also, Matter of Westinghouse Elec. Corp. v Tully, 63 NY2d 191, 196.)
The Second Circuit in Doyle (supra), addressing this very issue, expressed the desire to uphold the statute if possible, stating that there is "a presumption that the legislature would prefer the portion remaining after partial invalidation to continue in effect” (786 F2d, at 528). The court found support for this approach in Supreme Court decisions Regan v Time, Inc. (468 US 641) and Buckley v Valeo (424 US 1) and the severability provision found in New York Civil Service Law § 186. This provision the court conceded applied to the severability of a provision, sentence or clause and not to the severability of application to a smaller group within a range, as in the instant case.
The court in Doyle (supra, at 528) quickly concluded that the New York "legislators would most likely have wished that prohibition to remain effective to the greatest extent possible”.
To reach this result the court admitted it was "[gjuided by the presumption of validity and by section 186” (supra, 786 F2d, at 528). The only functional analysis given in the Doyle opinion was to the effect that the State’s policy was to limit hiring of police officers to those under 29 and that severability would leave the statute applicable to "large numbers of potential applicants who have become 29 but not 40” (supra, at 528).
This court declines to adopt the approach of the Second Circuit in Doyle (supra) and places its reliance instead upon the plain meaning of Judge Cardozo’s words in People ex rel. Alpha Portland Cement Co. v Knapp (supra). Nowhere in Judge Cardozo’s opinion quoted above can there be found a presumption of severability. "The principle of division is not a principle of form. It is a principle of function” (supra, 230 NY, at 60).
A true functional analysis must be more than a restatement of the obvious. Certain other consequences of severability must be examined in light of the intent of the Legislature. First, to deny those between ages 29 to 39 while allowing applicants age 40 or older could have in fact increased the average age of police recruits, not lowered it. Second, the *1059 Legislature would in effect be condoning a situation where applicants in their late thirties who would be routinely denied from eligibility lists would have to be restored to such lists merely by getting older — again, the directly opposite result of the legislative intent in enacting section 58 and its predecessors. To the extent that the intent in passing section 58 also included the exclusion without testing of the greatest number of people assumed to be unqualified, the effect of enforcing the remainder of section 58 after Hahn (supra) and before amendment of the ADEA is similarly counterproductive. Respondents urge upon the court to take notice of legislative inaction or silence during the relevant time period as evidence of intent to enforce the remaining part of section 58. Determining the legislative intent behind a bill signed into law is often difficult; to speculate on the significance of legislative silence over the span of a few years on any specific question appears to be a sure path toward error.
After Chief Judge Curtin’s holding in Hahn (596 F Supp 939, supra) the respondents did not enforce the remainder of section 58 against the very age group in question here. Only a year later and after the Second Circuit’s Doyle decision (supra) did these same respondents set about removing the names of the petitioners herein from eligibility lists. The respondents’ own unwillingness to enforce the remainder of section 58 until they were encouraged by the Doyle decision may also be relevant on the question of legislative intent. In that event, the respondents’ silence pre-Doyle says a lot more to this court than any silence from Albany.
The court finds the remainder of section 58 not severable and therefore not enforceable against the five remaining petitioners eligible for appointment in 1986. The constitutionality of the remainder of section 58 is specifically not addressed (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 150).
But for the appointing agencies’ utilizing section 58 of the Civil Service Law to remove from eligibility the names of the remaining petitioners, they would have been appointed. Therefore, this court directs their appointment forthwith to the respective agencies.
The court makes no determination at this time regarding any award for back pay and seniority demanded by the petitioners, and shall set a hearing on the same forthwith.
The parties having failed to stipulate dates of eligibility and *1060 decertification regarding the petitions of Panara and Harold, the court is unable to decide these questions of fact without evidence from both sides, and shall set a hearing on this issue. Respondents’ motion for summary judgment as to these petitioners is denied at this time.
The petitions of those stipulated not to have standing, of those stipulated to have standing only after January 1, 1987, and of those who have administrative complaints pending before the SDHR are dismissed.